MILWAUKEE PROFESSIONAL FIREFIGHTERS, LOCAL 215, IAFF, AFL–CIO, Respondent, v. CITY OF MILWAUKEE, and another, Appellants.

*No. 75–67. Argued March 28, 1977.—Decided May 17, 1977.*
(Also reported in 253 N.W.2d 481.)

1

For the appellants there were briefs by *James B. Brennan,* city attorney, and *Thomas E. Hayes,* assistant city attorney, and oral argument by *Mr. Hayes.*

For the respondent there was a brief by *John S. Williamson, Jr.* and *Goldberg, Previant & Uelmen, S. C.* of Milwaukee, and oral argument by *Mr. Williamson.*

HANLEY, J. The following issues are presented on appeal:

1. Did the circuit court abuse its discretion by issuing the December 19, 1974 order for a preliminary injunction pending the award of the arbitrator?

2. Did the arbitrator award upon a matter not submitted to him?

3. Did the arbitrator exceed his powers by making an award contradicting the collective bargaining agreement?

4. Was it proper for the circuit court to grant permanent injunctive relief in the orders of February 4 and March 24, 1975, when procedural requirements were not met?

5. Was the permanent injunction in the February 4, 1975 order sufficiently definite and certain to provide a basis for a finding of contempt for violation thereof?

6. Are the findings of contempt invalid because of a failure of the Association to meet the statutory procedural requirements?

7. Did the circuit court fail to make findings requisite to the adjudications of contempt?

8. Was the evidence sufficient to sustain the circuit court's adjudications of contempt?

9. Was it proper for the circuit court to award the Association $500 in attorneys' fees by the order of February 4, 1975?

*Preliminary Injunction*

The appellants request that this court reverse the order of December 19, 1974 claiming the court abused its discretion.

Under the circumstances of this case, the issue regarding the preliminary injunction is moot. The order of December 19, 1974 was issued pending the arbitrator's award, which was subsequently made on December 30, 1974. The award having been made, the relief given by the circuit court pending that award has been terminated. Regardless of this court's conclusion as to the propriety

of the circuit court's action in requiring selection of work schedules under both methods pending the award, the result would have no practical effect upon the controversy. Under such circumstances, the issue is moot. *City of Racine v. J–T Enterprises of America, Inc.*, 64 Wis.2d 691, 700, 221 N.W.2d 869 (1974). We recognize that exceptions to the general rule exist, such as where the issues are of great public importance, *State v. Seymour*, 24 Wis.2d 258, 261, 128 N.W.2d 680 (1964), where the constitutionality of a statute is involved, *Doering v. Swoboda*, 214 Wis. 481, 253 N.W. 657 (1934), or where the precise situation under consideration arises so frequently that a definitive decision is essential to guide trial courts, *Carlyle v. Karns*, 9 Wis.2d 394, 101 N.W.2d 92 (1960).

We conclude that the issue of the December 19, 1974 order is moot and not within any exception which would warrant deviation from the general rule that moot issues will not be determined. The appeal in respect to that order is therefore dismissed.

## Award Beyond the Scope of Submission

Upon concluding that the orders issued by Chief Stamm on December 6, 1974 violated the terms of the collective bargaining agreement, the arbitrator directed that scheduling for the year 1975 be conducted as it had been in 1974. One of the appellants' contentions in challenging the circuit court's order of February 4, 1975, confirming the award, is that the arbitrator, in so requiring the maintenance of past practice, awarded on a matter not submitted to him. The parties here have agreed that secs. 298.08 through 298.15, Stats., shall apply to awards granted as the result of arbitration between them. Sec. 298.11(1)(b), Stats., requires the circuit court to modify or correct an award upon the application of a party where the arbitrator has awarded upon a matter

not submitted. In this case, appellants did apply for such a modification and therefore, if the issue of maintenance of past practice was not submitted to the arbitrator, the circuit court should not have confirmed that aspect of the award.

Under paragraph E of the portion of the collective bargaining agreement dealing with grievance arbitration, the City and Association provided: "The arbitrator shall expressly confine himself to the precise issues submitted for arbitration and shall have no authority to determine any other issue not submitted to him. . . ."

The issue therefore is whether the submission included the issue of whether the maintenance of past practice should be required. Where the question is whether a particular issue was submitted to the arbitrator this court has said:

"[I]t is not necessary that the subject be submitted by bill of particulars or with the same particularity required in pleadings. It is enough if a common intent as to what was submitted appears with reasonable certainty. If what was submitted appears by manifest implication it is as certain as if positively expressed." (citations omitted). *Putterman v. Schmidt*, 209 Wis. 442, 447, 245 N.W. 78 (1932). *See also Manitowoc v. Manitowoc Police Dept.*, 70 Wis.2d 1006, 1012, 236 N.W.2d 231 (1975).

The intent of the parties as to what they submitted to the arbitrator is evidenced by the grievance form filed by the Association and by the opening remarks of counsel before the arbitrator. Upon the grievance form under "Statement of Grievance" the Association asserted that the orders and special notice of December 6, 1974 violated the collective bargaining agreement. Under "Action Requested" the Association asked: "That the Orders and Special Notice be rescinded and that the practices in effect in 1974 be placed into effect." Thus, maintenance of

the past practice was the relief requested by the Association from the outset.

Before the arbitrator, counsel for the City and Chief spoke first and framed the issue to be determined as follows:

"[W]hether certain orders issued by the chief engineer of the Fire Department relative to the scheduling of vacations and relative to what is known as special duty work days are in violation of the substantive provisions of the agreement. . . ."

Counsel for the Association agreed that this was the issue before the arbitrator but added the request for the remedy of maintenance of past practice. In respect to this request for relief, counsel for the City then stated:

"Mr. Williamson's [counsel for Association] intent to propose to the arbitrator, that is the past or what he claims to be the past practice be the result that obtains out of these proceedings, we will submit that under the contract arbitration that could in fact only occur if the contract by its terms required that particular result. That is inasmuch—if it is determined that the contract does not require that particular state of affairs we would assume that we would have other alternatives in the event the arbitrator determined that these particular orders were in violation of the contract."

We think that the above exchange of views on the question of the issues submitted indicates a common intent to determine whether it should be required that the scheduling practices used in the past be maintained. Although the statement for the City shows disagreement with counsel for the Association, the disagreement is clearly as to the merits of the question, that is the propriety of the maintenance of past practice, in view of the collective bargaining agreement, and not as to whether the issue itself was before the arbitrator. Therefore, we conclude, it may not be said the arbitrator awarded upon a matter not submitted to him.

*Award in Excess of Power*

The appellants' second challenge to the award is founded on the claim that the arbitrator exceeded his powers. Under sec. 298.10 (1) (d), Stats., where the arbitrator exceeds his powers, the circuit court must make an order vacating the award.

Before the arbitrator, the City placed great reliance upon those provisions of the labor agreement which recognize the power of the Chief to manage and direct the operation of the fire department. These provisions are:

"PART II

". . .

"B. *MANAGEMENT RIGHTS*
"1. The Association recognizes the right of the City and the Chief Engineer, Fire, to operate and manage its affairs in all respects. The Association recognizes the exclusive right of the Chief Engineer, Fire, to establish and maintain departmental rules and procedures for the administration of the Fire Department during the term of this Agreement provided that such rules and procedures do not violate any of the provisions of this Agreement.
"2. The City and the Chief Engineer, Fire, have the exclusive right and authority to schedule overtime work as required in the manner most advantageous to the City.
". . .
"9. The Association pledges cooperation to the increasing of departmental efficiency and effectiveness. Any and all rights concerning the management and direction of the Fire Department and the fire force shall be exclusively the right of the City and the Chief Engineer, Fire, unless otherwise provided by the terms of this Agreement as permitted by law.
". . .

## "SCHEDULE A

" . . .

*"SPECIAL DUTY PAY*
"Effective upon the execution of this Agreement:
"1. When the Chief Engineer, Fire, assigns men on off days for special duty, they shall be compensated in cash at a straight time rate computed on the basis of the employe's hourly rate of pay for the average work week in effect as established under the Hours of Work provision of this Agreement.
" . . .
"3. Administration and control of the provisions of this paragraph shall be under the Chief Engineer, Fire, on an equitable basis.
" . . .

*"VACATIONS*
" . . .
"2. The scheduling of vacations shall be controlled by the Chief Engineer, Fire.
" . . .

*"HOLIDAYS*
" . . .
"2. The scheduling of such hours off shall be controlled by the Chief Engineer, Fire."

On the basis of the above quoted provisions, the City and Chief contended that the changes in scheduling effectuated by the orders and special notice of December 6, 1974, were within the "unfettered management function," and therefore the Chief could make such changes unilaterally.

The arbitrator, on the other hand, took particular note of the statements in the labor agreement that negotiation between the City and Union was favored in regard to changes in wages, hours and working conditions. The agreement contained the following provisions:

## "PART II

". . .

"C. *WAIVER OF ACTIVITY*

"Both parties to this Agreement acknowledge that it is in their best individual and mutual interest to secure changes in wages, hours and working conditions through negotiations which culminate in a contract and pledge to observe this in good faith.

". . .

## "PART IV

"A. *AID TO CONSTRUCTION OF PROVISIONS OF AGREEMENT*

". . .

"5. During the term of this Agreement prior to the establishment of new rules or regulations or changes in existing rules or regulations, the Association shall be afforded the opportunity to negotiate with the Chief Engineer, Fire, in accordance with procedures agreed upon between the Association and the Chief Engineer, Fire, which will be prescribed and set forth in the rules of the Fire Department and become effective on the execution date of this Agreement, provided such new rules or regulations or changes in existing rules or regulations do not fall within the Chief Engineer, Fire's unfettered management function."

In reaching his decision, the arbitrator interpreted the various provisions of the agreement concerning the "unfettered management function" to apply "to the ministerial functions of rule and regulation making rather than the really substantive effect of such actions." He concluded that the matters covered by the orders and special notice of December 6, 1974 involved the substantive rights of the firefighters, and therefore those matters fell outside the unfettered management function. Consequently, the arbitrator determined that under the Agreement, specifically PART IV, A., 5, quoted above, the matters covered by the orders and special notice

should have been the subject of meaningful negotiation. Such negotiation not having taken place, the arbitrator declared that the orders and special notice were in violation of the agreement and therefore void. Finally, the arbitrator directed that the scheduling for 1975 be conducted as it had been in the previous year.

The appellants contend the arbitrator exceeded his power by "manifesting an infidelity" to the collective bargaining agreement. Such infidelity was manifested by (1) the adoption of the ministerial—substantive distinction in regard to matters which fall within the unfettered management function, and (2) the requirement that past practice be maintained.

An arbitrator obtains his authority from the contract of the parties. *Wisconsin Employment Relations Board v. Teamsters Local No. 563*, 75 Wis.2d 602, 611, 250 N.W. 2d 696 (1977). The function of the arbitrator in disputes under a collective bargaining agreement is to interpret and apply the agreement. Elkouri & Elkouri, *How Arbitration Works* 296 (1976).

"[A]n arbitrator is confined to the interpretation of the collective bargaining agreement; he does not sit to dispense his own brand of justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to his obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).
"Thus the arbitrator has authority to resolve only questions of contractual rights." *Alexander v. Gardner-Denver Co.*, 415 U. S. 36, 53–54 (1974).

Judicial review of arbitration awards is very limited. The strong policy favoring arbitration as a method for settling disputes under collective bargaining agreements

requires a reluctance on the part of the courts to interfere with an arbitrator's award upon issues properly submitted. *United Steelworkers of America v. Enterprise Wheel & Car Corp., supra* at 596; *Wisconsin Employment Relations Commission v. Teamsters Local 563, supra* at 610. In *Denhart v. Waukesha Brewing Co.,* 17 Wis.2d 44, 51, 115 N.W.2d 490 (1962), the court stated:

"While this court may disagree with the interpretation of the contract reached by the arbitrator, the parties contracted for the arbitrator's settlement of the grievance and that is what they received."

Thus, the function of the court upon review of an arbitration award is a supervisory one, the goal being merely to ensure that the parties receive the arbitration that they bargained for. *Los Angeles Newspaper Guild, Local 69 v. Hearst Corp.,* 504 F2d 636, 642 (9th Cir. 1974), *cert. denied,* 421 U.S. 930 (1975).

The appellants' first contention, that the arbitrator exceeded his powers by adopting the ministerial—substantive distinction in relation to the scope of the unfettered management function, is precisely that sort of contention which the court should find has no merit under the principles above. The arbitrator simply determined that the matters covered by the orders and special notice of December 6, 1974 did not fall within the unfettered management function, and therefore were subject to negotiation. This determination is a matter solely of the interpretation and application of the collective bargaining agreement, clearly within the arbitrator's authority. Therefore, the portion of the award concluding that the orders and special notice violated the agreement draws its essence from the agreement and should not be disturbed.

The appellants challenge to the second part of the award, which required the maintenance of past practice,

however, has merit. We believe the direction that the past practice be maintained does not draw its essence from the collective bargaining agreement.

As concluded in the resolution of the preceding issue, the question of whether the past practice should be maintained was properly submitted to the arbitrator. Thus, the question before the arbitrator, who is authorized to resolve only questions of contractual rights, was whether the contract required that the past practice be maintained. Although the arbitrator did direct that such practice be maintained, it is clear from his decision that he did not do so because, under his interpretation and application of the agreement, maintenance of the past practice was required. Rather, this direction by the arbitrator, his decision shows, was based upon his understanding of the wishes of the parties.

It is clear from the record the appellants did not agree that if the orders and special notice were found to be violative of the collective bargaining agreement, then, solely upon that conclusion, the past practice could be required as the arbitrator saw fit. Counsel for appellants advised the arbitrator that, as far as they were concerned, that result could obtain only if under the agreement maintenance of the past practice was required.

The Association argues that the arbitrator did conclude that the labor agreement required the maintenance of the past practice "to the extent that the Chief could not unilaterally change substantial conditions of employment referred to in the Agreement." The arbitrator's direction of the maintenance of the former procedures is not, however, limited to that extent, for it precludes *any* change, even if it is not unilateral or related to substantive matters. The fact that the orders and special notice before the arbitrator were determined violative of the agreement does not compel the conclusion that any change was likewise violative.

The conclusion as to the orders and special notice related solely to those particular actions of the Chief, and did not extend to any and all future action. The direction of the maintenance of the past practice could only follow from a conclusion that any future action would be violative of the labor agreement; that is, that the agreement required the past practice be maintained.

The arbitrator stated there was no alternative but to direct that the past practice be maintained. This statement also follows the erroneous logic that because the particular orders and special notice before him were contrary to the agreement and void, the past practice was required. He also asserted, as a reason for his directive the fact that no sufficient basis had been established for supplanting the past practice. The arbitrator's statements indicate he believed he was obligated to direct something, whether that the past practices be maintained or that they be replaced. We think this evidences a complete misunderstanding of his authority in respect to this issue.

The arbitrator was to determine the question of whether past practice was required under the contract. He had already concluded that the orders and special notice were void and unenforceable. If he decided that the contract did not require the maintenance of the past practice, then his answer should have been simply that past practice was not necessarily required. If he concluded past practices were required by the agreement, the proper course would be to direct their maintenance. The arbitrator did not, however, find that the agreement required the maintenance of the past practice, yet he directed that they be maintained. By doing so, the arbitrator has added to the labor agreement a provision compelling the implementation of the scheduling practices utilized for the year 1974. This action is contrary to the

admonition in the labor agreement that "[t]he arbitrator shall neither add to, detract from, nor modify the language of the Agreement." Although arbitrators are to be afforded flexibility and latitude in formulating remedies, the arbitrator here has not confined himself to the agreement, as he is required, and thus has denied the appellants the arbitration they bargained for. Since this aspect of the award has not drawn its essence from the collective bargaining agreement, the arbitrator exceeded his power in respect thereto. The circuit court, therefore, erred in confirming the part of the award which directed the maintenance of past practice.

It appears from the record that the permanent injunction imposed by the circuit court's order of February 4, 1975 and the subsequent adjudications of contempt are based to a large extent upon the arbitrator's direction of the maintenance of past practice. Therefore, it is impossible to determine if the circuit court would have proceeded as it did if the maintenance of past practice had not been directed. It is difficult to consider the remaining questions upon this appeal in the absence of this direction of the arbitrator. Thus, it is determined that, on the basis of the conclusion that the circuit court erred by confirming the arbitrator's direction that past practice be maintained, (1) the part of the order of February 4, 1975 confirming the arbitrator's decision that the orders and special notice were void be affirmed, (2) the remaining parts of the order of February 4, 1975 be reversed, and (3) the order of March 24, 1975 be reversed. The entire matter is remanded to the circuit court for further proceedings in light of the alteration of the arbitration award.

*By the Court.*—Appeal as to the order of December 19, 1974 is dismissed; remaining orders affirmed in part, reversed in part; cause is remanded for further proceedings consistent with this opinion.