MILWAUKEE BOARD OF SCHOOL DIRECTORS, Plaintiff-Appellant, v. MILWAUKEE TEACHERS' EDUCATION ASSOCIATION, Defendant-Respondent.

Supreme Court

*No. 77–345.  Argued December 4, 1979.—*
*Decided January 15, 1980.*
(Also reported in 287 N.W.2d 131.)

416

For the appellant the cause was argued by *Nicholas M. Sigel,* principal assistant city attorney, with whom on the brief was *James B. Brennan,* city attorney.

For the respondent there was a brief by *Richard Perry* and *Perry & First, S.C.,* of Milwaukee, and oral argument by *Richard Perry.*

CONNOR T. HANSEN, J.   The Milwaukee Board of School Directors (hereinafter Board) and the Milwaukee Teachers' Education Association (hereinafter MTEA) entered into a collective bargaining contract for all regular teaching personnel excluding substitute per diem teachers. The agreement was effective January 1, 1973, through December 31, 1974.

On October 17, 1974, the MTEA filed a grievance against the Board alleging that a number of regular teacher positions had been filled by substitute teachers, and the positions to which these substitutes had been assigned were expansion positions or unfilled positions which were in the regular teacher bargaining unit. The MTEA alleged that the substitutes were performing the duties of regularly appointed teachers, but were not enjoying the benefits of such teachers under the collective bargaining contract.[1]

The MTEA claimed the Board violated the recognition clause contained in Part II, Section A of the contract, which provides:

"A. *RECOGNITION*
"The Board of School Directors (hereinafter referred to as the Board) recognizes the Milwaukee Teachers' Education Association (hereinafter referred to as the MTEA) as the duly certified exclusive collective bargaining representative for all regular teaching personnel (hereinafter referred to as teachers) teaching at least fifty percent of a full teaching schedule or presently on leave (including guidance counselors, school social workers, teacher-librarians, recreation instructors, traveling music teachers and teacher therapists, including speech therapists, occupational therapists and physical therapists), employed by the Board, excluding substitute per diem teachers, office and clerical employes, and other employes, supervisors, and executives. . . ."

Apparently a change in Board policy precipitated the instant dispute. The policy of the Board during the 1960's in regard to hiring teachers was to overhire teachers and then assign the surplus teachers to specific schools once the fall needs list was finalized. This practice of overhiring ended in 1973. Any vacancies which

[1] It appears there are approximately 5800 regular teaching positions in the school district and it is alleged that 43 of such positions for the 1973–74 contract year were held by substitute teachers.

occurred were filled by going to the best qualified available candidate. If none existed, substitutes were used. The practice of using substitutes in such a manner was supplemented by the practice of allowing the principals to evaluate the performance of the substitutes and then if the principal was satisfied with their performance, the substitutes would be employed as regular teachers retroactively to the date of their initial employment in that semester. This retroactive appointment allowed the substitutes to receive pay and benefits of regular certified teachers as specified in the contract.

The parties stipulated that the grievance was properly before the arbitrator, and agreed to grant the arbitrator jurisdiction over the remedial question in the event a remedy was ordered and the parties themselves failed to reach an agreement.

In his award dated January 17, 1977, the arbitrator concluded that the contract specifically excluded substitute teachers. He recognized that the contract provided no direct language which clearly specified under what conditions a teacher was considered to be regularly appointed; nevertheless, the arbitrator stated that the Recognition Clause in the contract supported the MTEA's position. That clause required that all regular teaching personnel working at least 50 percent of a full teaching schedule should be afforded the protection of the agreement.

The arbitrator held that the policy of filling all vacancies with substitutes was in violation of the contract. The policy of the Board could not be instituted unilaterally, but such a change must be negotiated with the MTEA. The arbitrator stated that a vacancy at the beginning of the year or during the school year could only be filled by a substitute until a certified person could be appointed; any long-term vacancy must be filled with a contract teacher and not a substitute.

In regard to the question of the applicability of the grievance to the 1975 contract, which was not submitted to arbitration, the arbitrator held that the violation was a continuing violation; that the Board's failure to respond to the grievance contributed to its lapse into 1975, and that the Board must assume the responsibility for its action. The arbitrator also stated that the provision in question was not altered in the subsequent contract, which was effective January 1, 1975, through December 31, 1976, and that no useful purpose would be realized if the remedy were confined to the 1974 agreement.

The award stated:

"For the reasons stated above the MTEA grievance is sustained. The arbitrator hereby orders the following:

"The Board is ordered to cease and desist from its policy of using substitute teachers to fill vanancies. [sic] A vacancy that is open must be filled with a contract teacher who will be covered by the agreement. The certifiable teachers who have been occupying a vacant position as a substitute are to be appointed with retroactive benefits and back-pay dating from the date of their appointment. The certifiable teachers who were placed as substitutes in a vacant position during the time from 1974 to the present* are to be awarded back-pay for the difference between substitute and regular contract benefits for the duration of their misclassification. Seniority and full benefits of the contract shall be granted for the time served in the vacant position. If a vacant position is now being held by an uncertified substitute, a certified teacher will be selected to replace the substitute. The instant remedy applies also to the case for the half-time appointments and the bilingual, bi-cultural position.

"Consistent with the decision above, the arbitrator will retain jurisdiction for the implementation of the award for any disputes for the 1974, 1975, and 1976 contract years. The parties are ordered to attempt to mutually resolve the disputed instances, but if an accord cannot be reached within 60 days, the arbitrator shall dispose of the issue(s). This case shall not be closed until such time as all remedies have been effectuated."

"* This assumes the practice has continued and the contract provision in question has remained unchanged."

Various proceedings were had in circuit court relating to this and other arbitration proceedings. However, germane to this appeal is that portion of a judgment of the circuit court entered July 27, 1977, which confirmed the arbitration award of January 17, 1977, and stated:

"a) In holding that the employer's conduct violated numerous sections of the collective bargaining contract, the Arbitrator did not exceed the authority conferred upon him by the collective bargaining contract. In holding that this was a continuing violation and that the parties are obligated to follow his Arbitration Award as long as the relevant contract provisions remain unchanged in successor contracts, the Arbitrator did not exceed his authority as an Arbitrator under the provisions of this contract. To hold otherwise as contended by the Milwaukee Board of School Directors, would destroy the finality of the Award.

"b) The determination of the Arbitrator that the Milwaukee Board of School Directors violated the provisions of its contractual agreement with the Milwaukee Teachers' Education Association, does not contravene secs. 119.16 (1) (m), 119.18, or 119.32, Stats., since the contract sets forth the manner in which the Milwaukee Board of School Directors and its Administrators, including the Superintendent of Schools, have chosen to exercise their functions and responsibilities as to those matters set forth in the contract."

On appeal, the Board does not challenge that part of the award of the arbitrator which ordered the Board to cease and desist from its policy of using substitute teachers to fill certain vacancies. Thus, the Board must recognize that if it persisted in such a policy it would be subject to further litigation. The Board, however, argues (1) that the arbitrator exceeded his authority by ordering it to appoint the substitute teachers to regular teaching positions, and (2) that the arbitrator appointed to consider a grievance under the 1974 contract, exceeded his authority by interpreting and making an award under successor contracts.

This court has held that an arbitrator's award is presumptively valid, and it will be disturbed only where invalidity is shown by clear and convincing evidence. *Stradinger v. City of Whitewater,* 89 Wis.2d 19, 37, 277 N.W.2d 827 (1979) ; *Scherrer Constr. Co. v. Burlington Mem. Hosp.,* 64 Wis.2d 720, 735, 221 N.W.2d 855 (1974). This court has also stated that it has a "hands off" attitude toward arbitrators' decisions. *Glendale Prof. Policemen's Asso. v. Glendale,* 83 Wis.2d 90, 98, 264 N.W.2d 594 (1978); *Jt. School Dist. No. 10 v. Jefferson Ed. Asso.,* 78 Wis.2d 94, 117, 253 N.W.2d 536 (1977) ; *WERC v. Teamsters Local No. 563,* 75 Wis.2d 602, 611, 250 N.W. 2d 696 (1977). This court has said that:

"Judicial review of arbitration awards is very limited. The strong policy favoring arbitration as a method for settling disputes under collective bargaining agreements requires a reluctance on the part of the courts to interfere with an arbitrator's award upon issues properly submitted. . . .

"Thus, the function of the court upon review of an arbitration award is a supervisory one, the goal being merely to ensure that the parties receive the arbitration that they bargained for. . . ." *Milw. Pro. Firefighters Local 215 v. Milwaukee,* 78 Wis.2d 1, 21, 22, 253 N.W.2d 481 (1977).

The decision of an arbitrator will not be interfered with for mere errors of judgment as to law or fact, but the court will overturn an arbitrator's award if there is perverse misconstruction or positive misconduct plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy. *Jt. School Dist. No. 10 v. Jefferson Ed. Asso., supra,* at 117, 118; *Scherrer Constr. Co. v. Burlington Mem. Hosp., supra,* at 729.

The Board first contends that the arbitrator exceeded his authority in ordering the Board to appoint substitute teachers to regular teaching positions.

Important here is the difference between the selection of substitute teachers and the appointment of regular teachers. Under the statutes, rules and contract provisions relating to the Milwaukee schools, substitute teachers are selected and assigned by the superintendent.[2] The only action of the Board is the establishment of a per diem pay schedule for the substitute teachers of the Milwaukee schools. Those occupying regular teaching positions are appointed under a more complex process. After examination by the superintendent and recommendation by the superintendent and committee on appointment and instruction, they are appointed to regular teaching positions by the Board.

The arbitrator recognized the fact that the contract excluded substitute teachers, but concluded that any teacher working at least 50 percent of a full teaching schedule should be covered by the agreement and held:

"The contract specifically excludes substitute teachers. However, it provides no direct language which clearly specifies under what conditions a teacher is considered to be regularly appointed. Despite this apparent omission, it appears that the Recognition Clause supports the MTEA position. That clause requires that teachers working at least fifty per cent of a full teaching schedule should be afforded the protection of the agreement. Thus, persons so hired would be entitled to *all* contract benefits and requirements including wages, hours and conditions of employment. . . ."

We believe the arbitrator misinterpreted the contract when he stated that the Recognition Clause requires that teachers working at least 50 percent of a full teaching schedule are covered by the contract. This is not what the contract states. It says "all *regular* teaching personnel . . . teaching at least fifty percent of a full teach-

[2] There were approximately 900 substitute teachers in the system. Although represented by the MTEA, they were organized as a separate bargaining unit with its own collective bargaining contract.

ing schedule" are covered. (Emphasis supplied.) Regular teachers are those who have been appointed pursuant to sec. 119.32, Stats. Furthermore, we find nothing in the contract, rules of the Board or statutes which could be interpreted as authorizing the arbitrator to order the Board to appoint these substitute teachers to regular teaching positions. To the contrary, there are several provisions of the contract which recognize the duties and responsibilities conferred on the Board by law and acknowledging the rule-making power of the Board.

The pertinent provisions of the contract are:

"WHEREAS, it is intended that the following contract shall be an implementation of the provisions of Section 111.70 Wisconsin Statutes consistent with the legislative authority which devolves upon the Board and the administrative authority and responsibility of the Superintendent of Schools and the statutes of the State of Wisconsin and amendments thereto and, insofar as applicable, the administrative rules of the Department of Public Instruction and amendments thereto."

"PART I
". . . .
"F. *AGREEMENT, RULES, POLICIES AND PROCEDURES*
"1. *Agreement and Existing Rules.* This contract shall, wherever the same may be applicable, include existing rules of the Board at the time the agreement is entered into. Where the contract requires changes in rules, 'existing rules' shall mean the rules as amended as required by the contract."

"PART II
". . . .
"C. *MANAGEMENT RESPONSIBILITIES*
"The MTEA recognizes the prerogative of the Board and Superintendent to operate and manage its affairs in all respects in accordance with its responsibilities.

The Board and Superintendent on their own behalf hereby retain and reserve unto themselves all powers, rights, authority, duties and responsibilities conferred upon and vested in them by the laws and the Constitution of the State of Wisconsin and of the United States. In exercise of the powers, rights, authority, duties and responsibilities by the Board or Superintendent, the use of judgment and discretion in connection therewith shall not be exercised in an arbitrary or capricious manner, nor in violation of the terms of this contract, Section 111.70 of the Wisconsin Statutes, nor in violation of the laws or the Constitution of the State of Wisconsin and of the United States."

*"PART IX*
*" . . .*
*"C. AIDE TO CONSTRUCTION OF THE PROVISIONS OF CONTRACT*
"It is intended by the parties hereto that the provisions of this contract shall be in harmony with the duties, obligations, and responsibilities which by law devolve upon the Board and Superintendent, and these provisions shall be applied in such manner as to preclude a construction thereof which will result in an unlawful delegation of powers unilaterally devolving upon the Board and Superintendent."

One of the rules of the Board which became part of the contract pursuant to Part I, Section F of the contract is Board Rule 2.05, which was in effect during 1973, 1974 and 1975. That rule states:

*"2.05 Teachers' examination and appointment.*

"The examination of teachers shall be conducted by the superintendent and his assistants, and the results of such examination shall be available for inspection by the committee on appointment and instruction. In conformity with and subject to the provisions of sections 42.70 (2), 119.20, and 119.32 of the Wisconsin statutes, the employment, classification, transfer and promotion of all employes included thereunder, and of all recreation instructors IV, shall be acted upon by the committee upon

recommendation of the superintendent, subject to approval by the board. Classification and transfer refer to the various groups and divisions of the salary schedules. All appointments shall be to the unassigned list. Assignments shall be made by the superintendent."

The arbitrator acknowledged that the contract provided no direct language which clearly specifies under what conditions a teacher is considered to be regularly appointed. However, he held that "the obvious intent of the parties in the contract and the bargaining history requires that vacancies be filled with regular contract teachers and not substitutes." As a result, the arbitrator directed that "[t]he certifiable teachers who have been occupying a vacant position as a substitute *are to be appointed* with retroactive benefits and back-pay." (Emphasis supplied.)

We are of the opinion that the arbitrator had no authority to order the Board to appoint the substitute teachers to regular teaching positions, because the statutes and rules of the Board, recognized by the contract, vest the authority to appoint regular teachers in the Board. We find no language in the contract which circumscribes the authority of the Board to appoint regular teachers.

This court has stated:

"An arbitrator obtains his authority from the contract of the parties. *Wisconsin Employment Relations Board v. Teamsters Local No. 563*, 75 Wis.2d 602, 611, 250 N.W.2d 696 (1977). The function of the arbitrator in disputes under a collective bargaining agreement is to interpret and apply the agreement. Elkouri & Elkouri, *How Arbitration Works* 296 (1976).

" '[A]n arbitrator is confined to the interpretation of the collective bargaining agreement; he does not sit to dispense his own brand of justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's

words manifest an infidelity to his obligation, courts have no choice but to refuse enforcement of the award.' *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960)." *Milw. Pro. Firefighters Local 215 v. Milwaukee, supra,* at 21.

Sections 119.16(1m), 119.18(1), 119.32(5), and 119.42 (1), Stats., provide:

"*119.16* **Board; duties** . . . .

"*(1m)* MANAGEMENT OF SCHOOLS. The public schools in every city of the 1st class shall be under the management, control and supervision of the board."

"*119.18* **Board; powers.** (1) RULES. The board may adopt and modify or repeal rules for its own government and for the organization, discipline and management of the public schools which shall promote the good order and public usefulness of the public schools."

"*119.32* **Superintendent of schools.** . . .

" . . . .

"*(5)* The superintendent of schools shall assign all teachers and engage and assign substitute teachers at the per diem compensation fixed by the board."

"*119.42* **Teacher tenure.** (1) The appointment of a teacher, as defined in s. 42.70(2)(q), in the city shall be on probation. After successful probation by completing 3 years of continuous service, the appointment shall be permanent during efficiency and good behavior. A teacher who has taught 3 years or more in the city immediately prior to the date on which such city becomes a city of the 1st class is deemed to have served his term of probation. A teacher who has a permanent appointment shall not be discharged, except for cause upon written charges. After 10 days written notice to the teacher of the charges and upon the teacher's written request, the charges shall be investigated, heard and determined by the board. The action of the board on the matter shall be final."

Sec. 42.70(2)(q), Stats., referred to in sec. 119.42(1), provides:

"(q) 1. 'Teacher' means all superintendents, principals, supervisors, welfare workers and attendance offi-

cers; all high school teacher-librarians having the quali-
fications of teachers as provided in the statutes and
prescribed by the board of school directors, pursuant to
subd. 2 except assistant or clerk librarians; all employes
defined as teachers and made eligible to membership and
becoming members of the teachers' retirement fund by
ss. 42.95 and 42.96; all regular instructors employed in
the public schools of such cities, and instructors of in-
strumental music classes whose positions normally re-
quire actual performance of duty for at least 600 hours
in each year; but this paragraph shall not affect the
election, appointment or tenure of the superintendent,
assistant superintendents, special supervisors, part-time
instructors of instrumental music classes or substitute
teachers."

Under these statutes and Board Rule 2.05 quoted above,
the Board has the sole authority to appoint teachers.

The arbitrator failed to recognize the fact that only
the Board has the power to appoint teachers and seemed
to ignore those provisions of the contract which recog-
nize the power and responsibilities of the Board. The
contract does not state how expansion positions or un-
filled positions are to be filled. It is devoid of any
language which specifies under what conditions a teacher
is to be considered regularly appointed. The arbitrator
recognized this fact. His decision ordering the Board to
appoint the substitute teachers to regular teaching posi-
tions was based upon his conclusion as to the "intent of
the parties in the contract. . . ." When disposing of an
arbitrable grievance the arbitrator cannot impose his
personal concept of justice upon the parties. The remedy
imposed must find its basis in the contract submitted to
the arbitrator for consideration.

The order of the arbitrator directing the Board to
cease and desist from its policy of using substitute
teachers to fill expansion positions and unfilled positions
is not challenged on appeal. However, we conclude the
remedy imposed by the arbitrator exceeded the contract

authority. He had no authority to order the Board to appoint the substitute teachers to regular teaching positions.

The Board also contends that the arbitrator exceeded his power in making the award since he was appointed under the 1974 contract, but he interpreted and made an award under successor contracts.

On October 17, 1974, the MTEA filed a grievance listing the grievant as "Milwaukee Teachers' Education Association" and listing the names of 43 substitute teachers, all of whom were employed as substitutes during 1974. The group grievance procedure set forth in the contract required that the superintendent or his designee schedule a third step conference within 10 days of the filing of the grievance and furnish a written disposition within 10 days of the conference. The Board, however, failed to give a written disposition of the grievance, so on May 19, 1975, the MTEA prepared a joint request for the appointment of an arbitrator, and hearings were thereafter held.

At the hearings, the arbitrator recognized the fact that the dispute arose under the contract in existence at the time the grievance was filed in October, 1974; the contract in effect at that time was the 1974 contract. The arbitrator stated:

· "The instant grievance arises out of the MTEA claim that the School Board's practice of using substitutes to staff the unfilled certified teacher's positions is a violation of the contract . . . ."

The 1974 contract defines a grievance as:

". . . an issue concerning the interpretation or application of provisions of *this* contract or compliance therewith. . . ." (Emphasis supplied.)

The contract also provides that the jurisdictional authority of the arbitrator is limited to consideration of grievances as above defined.

Thus, it is clear that he arbitrator was authorized by the contract and by the parties to resolve only grievances arising out of the 1974 contract.

At the hearings, the Board claimed that the remedy should be limited to grievances arising under the 1974 contract. The MTEA, on the other hand, contended that the grievance included continued violations of the contract in 1975 and 1976, and alleged that continued violation of the contract by the Board in a subsequent contract period resulted from the Board's own negligence in failing to timely respond to the grievance. The arbitrator stated in his decision:

"Next is the question of the applicability of the grievance to the 1975 contract. Under normal circumstances the arbitrator would concur with the Board's position, i.e., the arbitrator's authority stems from the contract and cannot extend beyond its boundaries—including time limit. However, in this case the violation is just as the MTEA has described it—a continuing violation. Moreover, the Board's failure to respond to the grievance has contributed to its lapse into 1975. The Board must therefore assume the responsibility for its action. In addition, the provision in question was not altered in the subsequent contract. Finally, no useful purpose would be realized if the remedy were confined to the 1974 agreement."

And he awarded that:

". . . [t]he certifiable teachers who were placed as substitutes in a vacant position during the time from 1974 to the present are to be awarded back-pay for the difference between substitute and regular contract benefits for the duration of their misclassification. . . ."

An arbitrator cannot ignore the contract in making his award. *Scherrer Constr. Co. v. Burlington Mem. Hosp.*, *supra*, at 732. Yet this is exactly what the arbitrator did

in this case. The grievance he was appointed to resolve concerned an alleged violation of the 1974 contract, and the 1974 contract authorized him to interpret or apply provisions of that contract only. Yet, in disregard of the 1974 contract, the arbitrator made an award to teachers who were initially hired by the Board in 1975 and 1976, and who may have had no rights under the 1974 contract and were not parties to the group grievance filed under the 1974 contract. They would only have rights under a 1975 or 1976 contract. Thus, the arbitrator exceeded his authority in rendering an award which affected teachers who were hired in 1975 or 1976.

The arbitrator attempted to justify his award on several grounds. He said that the Board's violation of the contract was a continuing violation and the contract provision was not altered in the subsequent contract. If the MTEA felt that there was a violation in 1975 or 1976, it could have filed a grievance under the 1975 or 1976 contract. The MTEA cannot expect that a grievance filed on account of a violation of one contract automatically covers any similar violations of any future contracts. The arbitrator also stated that the Board's failure to respond to the grievance contributed to its lapse into 1975. The nonaction of an employer is not a basis for enlarging the authority of an arbitrator. Finally, the arbitrator made an award covering 1975 and 1976 violations, because, as he stated, no useful purpose would be realized if the remedy were confined to the 1974 agreement. To the contrary, a remedy confined to the 1974 agreement would benefit all of those 43 teachers who were employed as substitutes during 1974.

We are of the opinion the arbitrator had no authority to award on matters outside the scope of the contract. An arbitrator obtains his authority from the contract of the parties. *Jt. School Dist. No. 10 v. Jefferson Ed.*

*Asso., supra,* at 101; *Milw. Pro. Firefighters Local 215 v. Milwaukee, supra,* at 21; *WERC v. Teamsters Local No. 563, supra,* at 611. An arbitrator is confined to the interpretation of that contract, and he does not sit to dispense his own brand of justice. *Milw. Pro. Firefighters Local 215 v. Milwaukee, supra,* at 21. When his words manifest an infidelity to his obligation, the court has no choice but to refuse enforcement of the award. *Id.*

The arbitrator in the present case was limited to a consideration of grievances as defined in the 1974 contract—grievances concerning the interpretation or application of the 1974 contract. He derived his authority from the 1974 contract and not from any subsequent contracts. Therefore, the arbitrator exceeded his power in interpreting and making an award under post-1974 contracts.

The MTEA's reliance on *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960) ; *John Wiley & Sons v. Livingston,* 376 U.S. 543 (1964) ; *Piano & Musical Inst. Workers, Local 2549 v. W. W. Kimball Co.,* 379 U.S. 357 (1964), reversing 333 F.2d 761 (7th Cir. 1964) ; and *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionary Workers,* 430 U.S. 243 (1977), is misplaced. The court in those cases held that the rights of parties under collective bargaining agreements and the obligation to submit disputes concerning those rights to arbitration are not extinguished by termination of the collective bargaining agreement. However, the court did not hold that an arbitrator, once appointed under a specific contract, can make an award under new contracts which were not in existence at the time the grievance arose and was submitted to arbitration. Those cases provide support for the proposition that the arbitrator could make an award concerning violations of the 1974 contract, even though the 1974 contract had expired by the time the award was made in 1977. However, such an issue is not before us.

The arbitrator was appointed to consider a grievance under the 1974 contract. We conclude that the arbitrator acted in excess of his authority in ordering the Board to appoint the substitute teachers to regular teaching positions and in interpreting and making an award under successor contracts. It is our determination that the circuit court erred in confirming the award to the extent that it ordered the Board to appoint the substitute teachers to regular teaching positions and that it interpreted and made an award under successor contracts. In these two respects the judgment confirming the award of January 17, 1977, is reversed. In all other respects the judgment is affirmed.

*By the Court.*—Judgment affirmed in part; reversed in part.