IN the MATTER OF ARBITRATION:
NICOLET HIGH SCHOOL DISTRICT, Movant-Respondent,

v.

NICOLET EDUCATION ASSOCIATION, Appellant-Petitioner.

Supreme Court

*No. 82–1869. Argued April 23, 1984.—Decided May 30, 1984.*

(Also reported in 348 N.W.2d 175.)

For the appellant-petitioner there were briefs by *Cheryl Rosen Weston* and *Cullen & Weston,* Madison, and oral argument by *Cheryl Rosen Weston.*

For the movant-respondent there was a brief by *Herbert P. Wiedemann* and *Foley & Lardner,* Milwaukee, and oral argument by *Mr. Wiedemann.*

WILLIAM G. CALLOW, J. This is a review of a decision[1] of the court of appeals affirming the order of the circuit court for Milwaukee county, Judge William A. Jennaro, which vacated an arbitrator's award ordering reinstatement and back pay for a teacher whose contract was not renewed. We reverse the court of appeals.

The issue presented on appeal is whether the arbitrator exceeded his authority under a collective bargaining agreement when, in determining that a school board's decision not to renew a teacher's contract was arbitrary, he reviewed a hearing record to determine whether the board's decision was supported by substantial and credible evidence.

June Domoe, who had been a Spanish teacher at Nicolet High School for twenty-six years, was informed in late February, 1981, that the School Board of the

---

[1] *Nicolet High School District v. Nicolet Education Association,* 114 Wis. 2d 114, 337 N.W.2d 846 (Ct. App. 1983).

Nicolet High School District (Board) was considering not renewing her teaching contract because of inadequate instructional skill and classroom management. Pursuant to sec. 118.22(3), Stats., Domoe requested and was granted a private conference with the Board. Following the private conference, the Board on March 12, 1981, voted not to renew Domoe's contract. The Nicolet Education Association (Association) on March 27, 1981, filed on behalf of Domoe a grievance in protest of the Board's decision not to renew Domoe's contract.

While the grievance was still pending, the Board agreed to hold a hearing on its nonrenewal decision. On May 26 and 27, 1981, the Board heard extensive testimony from supervisors, teachers, and students about Domoe's teaching abilities. On June 4, 1981, the Board reaffirmed its decision not to renew Domoe's contract. The Board's decision denying Domoe's grievance stated in its entirety:

"Based upon its review of the evidence introduced at the hearing on May 26 and May 27, 1981, the Board has found that there is good and sufficient reason, in accordance with Article XVII of the Collective Bargaining Agreement, for non-renewal of June Domoe's contract for the 1981–82 school year. Specifically, Mrs. Domoe's teaching performance in the classroom, including both her classroom management and her instructional skills, has been unsatisfactory. Accordingly, the grievance protesting the nonrenewal is denied."

The Association submitted the matter to arbitration pursuant to the collective bargaining agreement, which provided in Article XIX:

"If a grievance is submitted to arbitration by the Association, the Association and the District shall jointly request the Wisconsin Employment Relations Commission to appoint a member of its staff as arbitrator for such grievance.

"The sole function of the arbitrator shall be to determine whether or not the rights of a teacher have been violated by the District contrary to an express provision of this Agreement. The arbitrator shall have no authority to add to, subtract from, or modify this Agreement in any way. The arbitrator shall have no authority to impose liability upon the District arising out of facts occurring before the effective date or after the termination of this Agreement. *A decision of an arbitrator within the scope of his authority shall be final and binding upon the District, the Association and the teachers.*" (Emphasis added.)

The collective bargaining agreement specified the respective rights and obligations of the Board and the employees. Article II of the agreement reserved to the school district the right "[t]o hire all employees and subject to the provision of law, to determine their qualifications and the conditions for their continued employment, or their dismissal or demotion." The agreement elaborated:

"The exercise of the foregoing powers, rights, authority, duties and responsibilities by the Board, the adoption of policies, rules, regulations and practices in furtherance thereof, and the use of judgment and discretion in connection therewith shall be limited only by the specific and express terms of this Agreement."

Article XVII provided the following standards for non-renewal of teaching contracts and for reviewing those actions:

"The District agrees that no teacher will be non-renewed except for incompetency, inefficiency, reduction in staff or other good and sufficient reason. If the teacher disagrees with the Board's determination, the matter may be processed through the grievance and arbitration procedure of this Agreement. In the event of arbitration regarding non-renewal or in event a non-renewal decision is challenged through any type of litigation or administrative proceeding *the judgment of*

*the Board shall not be reversed or modified unless it is determined to be arbitrary, capricious, discriminatory or in bad faith.*" (Emphasis added.)

The issue presented to the arbitrator was stipulated to be: "Under the Collective Bargaining Agreement, which is in evidence as Joint Exhibit No. 1, what disposition should be made of the grievance of Mrs. Domoe, which is in evidence as Joint Exhibit 7?" At the hearing held on the matter on September 28, 1981, the Board provided the arbitrator with a transcript of the Board's hearings and copies of the exhibits. Except for testimony on subsidiary issues by Domoe and one other witness for the Association, no other testimony or evidence was introduced pertaining to the Board's decision denying Domoe's nonrenewal grievance.

On March 25, 1982, the arbitrator issued a decision sustaining Domoe's grievance and ordering reinstatement and back pay. The arbitrator, after carefully reviewing the record and scrutinizing the testimony of witnesses supporting the nonrenewal decision, decided that the Board's decision was "arbitrary in a fundamental sense, since it is not predicated on clear and substantial evidence of incompetence from even one witness" and because he found "no hint in the Board's . . . decision" that it had made "any real attempt to weigh . . . conflicts [in the testimony presented]."

The Nicolet High School District on April 27, 1982, filed a motion in Milwaukee county circuit court to vacate the arbitrator's award. The Association filed a motion to affirm the award. By order dated September 14, 1982, the circuit court granted the motion to vacate, concluding that the arbitrator had exceeded his authority under the contract.[2] The Association appealed the cir-

[2] Section 111.10, Stats., provides that, when an arbitrator is appointed by the Wisconsin Employment Relations Commission,

cuit court's order to the court of appeals. The court of appeals affirmed the order, finding that the arbitrator had exceeded his authority because he did not properly determine whether the Board's decision was arbitrary but, rather, substituted his discretion for that of the Board's. The Association petitioned this court for review, and we granted the petition.

This review requires us to decide whether the arbitrator exceeded the authority granted him under the collective bargining agreement when he determined, after reviewing the record, that the Board's nonrenewal decision was arbitrary because the decision was not based on "clear and substantial evidence of incompetence" and because the Board failed to show that it weighed relevant testimony and evidence. If the arbitrator exceeded his authority granted by the collective bargaining agreement, the award must be vacated pursuant to sec. 788.10 (1) (d), Stats.

This court has developed several well-settled rules governing review of arbitrators' decisions. An arbitrator's award is presumptively valid, and it will be disturbed only when its invalidity is demonstrated by clear and convincing evidence. *Milwaukee Board of School Directors v. Milwaukee Teachers' Education Asso.*, 93 Wis. 2d 415, 422, 287 N.W.2d 131 (1980). Furthermore, our review is quite limited in scope. As we noted in *Oshkosh v. Union Local 796–A*, 99 Wis. 2d 95, 299 N.W. 2d 210 (1980) :

the arbitration is governed by Chapter 788, Stats. Section 788.10 provides, in pertinent part:

"(1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

". . . .

"(d) Where the arbitrators exceeded their powers. . . ."

"This court's acceptance of the *Steelworker's Trilogy* in the case of *Dehnart v. Waukesha Brewing Co.,* 17 Wis. 2d 44, 115 N.W.2d 490 (1962), is indicative of a policy of limited judicial review in cases involving arbitration awards in labor contract disputes. A final and binding arbitration clause signifies that the parties to a labor contract desire to have certain contractual disputes determined on the merits by an impartial decision-maker whose determination the parties agree to accept as final and binding. Great deference is paid to the arbitrator's award as the product of the initial bargain of the parties. Therefore, the court's function in reviewing the arbitration award is *supervisory* in nature. The goal of this review is to insure that the parties receiove what they bargained for. *Milwaukee Pro. Firefighters Local 215 v. Milwaukee,* 78 Wis. 2d 1, 22, 253 N.W.2d 481 (1977).

"The parties bargain for the judgment of the arbitrator—correct or incorrect—whether that judgment is one of fact or law." *Id.* at 103 (footnotes omitted) (emphasis in original).

". . . We therefore must uphold the arbitrators' decision as long as it is within the bounds of the contract language, regardless of whether we might have reached a different result under that language, and does not violate the law." *Arbitration Between West Salem & Fortney,* 108 Wis. 2d 167, 179, 321 N.W.2d 225 (1982).

However, the arbitrator's decision-making authority is not unlimited. If the arbitrator exceeded his authority by, in effect, undertaking to amend the contract, to substitute his own discretion for that vested in one or another of the parties, or if the arbitrator acted to dispense his own brand of justice, the award must be vacated. *Milwaukee v. Milwaukee Police Asso.,* 97 Wis. 2d 15, 26, 292 N.W.2d 841 (1980) (citations omitted).[3] Further,

---

[3] An arbitrator's award may also be overturned if there was a perverse misconstruction, or if there is positive misconduct plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy. *Joint School District No. 10 v. Jefferson Education Asso.,*

the power of the arbitrator is derived solely from the contract, and that authority is, therefore, limited by the terms of the contract. *See id.*, at 25.

As noted earlier, the arbitrator by the terms of the collective bargaining agreement had the authority to reverse the Board's nonrenewal action only if it was determined to be "arbitrary, capricious, discriminatory or in bad faith." The agreement did not specify how the arbitrator was to reach this decision. The District argues that the arbitrator exceeded his authority because in reaching his decision the arbitrator reviewed and weighed the testimony adduced at the Board's hearings. We conclude that the arbitrator properly reviewed the testimony in reaching his decision.

In *West Salem,* we held that an arbitration panel was entitled to hold a de novo hearing in reviewing whether a school board discharged an employee for just cause. In so holding, we noted:

". . . An arbitration panel appointed pursuant to the grievance procedure must determine whether just cause for discharge existed in order to resolve the grievance. Because the language in the agreement is vague and indefinite as to exactly what procedures should be used to arrive at that determination, it is within the province of the arbitration panel, as the interpreter of the contract language, to devise such procedures as it considers necessary to reach a decision, as long as those procedures are compatible with the contract language and do not violate the law.

". . . .

". . . If the parties disagree with the procedure employed by the arbitrators, their remedy is to change the

78 Wis. 2d 94, 117–18, 253 N.W.2d 536 (1977); *see also* secs. 788.10(1)(a), (b), and (c), Stats. None of these grounds were asserted in this appeal, so we confine ourselves to the question whether the arbitrator exceeded his authority.

language of the agreement. In view of the broad powers of contract interpretation vested in arbitrators, their interpretation of the vague language governing arbitration procedure contained in this agreement should be upheld as the parties' bargain." *West Salem,* 108 Wis. 2d at 177–78, 180.

Likewise, in this case the arbitrator, not being limited by the terms of the contract, was entitled to reach a decision by means he considered appropriate, so long as those means comported with the contract and were not contrary to law.

We conclude that the arbitrator's review of the testimony in the record was an appropriate means to reach his decision. The arbitrator in this case was empowered to reverse the Board's decision if the decision was "arbitrary." In *Olson v. Rothwell,* 28 Wis. 2d 233, 239, 137 N.W.2d 86 (1965), we stated:

". . . Arbitrary or capricious action . . . occurs when it can be said that such action is unreasonable or does not have a rational basis. *Chicago, M., St. P. & P.R. Co. v. Public Service Comm.* (1954), 267 Wis. 402, 66 N.W. (2d) 351. Arbitrary action is the result of an unconsidered, wilful and irrational choice of conduct and not the result of the 'winnowing and sifting' process."

In *Westring v. James,* 71 Wis. 2d 462, 476–77, 238 N.W. 2d 695 (1976), we alluded to a distinction between a substantial evidence test and an arbitrary and capricious test. However, this dichotomy was necessitated by the fact that we were reviewing an administrative agency decision under the standards set forth in sec. 227.20(1), Stats., 1973, which permitted court reversal or modification if the agency decision was "(d) Unsupported by substantial evidence in view of the entire record as submitted; or (e) Arbitrary or capricious." Thus the statutory scheme made the substantial evidence standard

and the arbitrary and capricious standard independent grounds for reversal of administrative agency decisions. In discussing this provision, we stated: "It should be noted, however, that, in almost any case that comes to mind, a decision which is supported by substantial evidence ordinarily would be held not to be arbitrary or capricious." *Id.* at 476. We believe the converse to be true also, because arbitrary action can be viewed as that without a rational basis or, in other words, lacking any substantial evidence supporting the decision.

In this case, the arbitrator, not being limited by the contract in the way in which he reached his decision, was entitled to review the record to determine whether there was a rational basis for the Board's decision. We note in this regard that the District submitted only the transcript and exhibits of the May 26 and 27 hearings for the arbitrator's review. The District cannot complain when the arbitrator reviewed the only record the District made available.

The Board could have made specific findings and conclusions based upon its review of the record and could have submitted these as the basis for its decision. Had this occurred, we believe, the arbitrator would have been obliged to review the decision in light of the Board's findings and conclusions. The underlying record would then be relevant only insofar as it needed to be reviewed to ensure that the Board's findings had a basis in the record. In this way the Board's decision could be tested against the articulated basis provided by the Board's findings and conclusions, rather than necessitating a careful review of the record to determine whether evidence or testimony supported the Board's decision. The Board's conclusory statement supporting its nonrenewal decision did not amount to findings of fact and conclusions, such that the arbitrator would be limited in reviewing the record.

We note that, if we accepted the District's position in this case, the arbitrator's role would be virtually meaningless. We believe the collective bargaining agreement gave the arbitrator the authority to make an independent decision whether the Board's action was arbitrary. The arbitrator was entitled to exercise some discretion in determining whether the Board's decision lacked a rational basis in the record. The Board's assertion that it can offer nothing more than statements in support of its decision and then restrict the arbitrator's scope of review of the record would result in too great a limitation on the arbitrator's reviewing authority for which the parties bargained.[4]

In this case, the arbitrator stated that he was making his decision under the following standard of review:

"In view of the Agreement's limitation and the defined, as well as commonly understood, meaning of 'arbitrary', it is the undersigned's opinion that the decision of the Board must be upheld if it is based on real and credible evidence of incompetence even if the majority of the evidence would lead to a different conclusion. To put it another way, if the Arbitrator were to conclude here that the testimony of at least one consistent, reliable witness was damning to the grievant, a Board determination to nonrenew would probably have to be upheld even if contrary, and equally convincing, witnesses were to testify. The testimony of the one, taken alone, would have to be considered real and substantial, and the

[4] As we noted in *Arbitration Between West Salem & Fortney,* 108 Wis. 2d 167, 180, 321 N.W.2d 225 (1982), "[i]f the parties disagree with the procedure employed by the arbitrators, their remedy is to change the language of the agreement." The parties to this agreement could specify what findings and conclusions the Board should make and what procedure and scope of review the arbitrator should use in reviewing the Board's action. In the absence of such specified procedures, the arbitrator is free to choose the methods by which he discharges his duties specified under the collective bargaining agreement.

weighing of that witness' testimony heavily and others' lightly would, up to a very considerable degree, be within the Board's and not the Arbitrator's discretion. But if the requisite substance is lacking in *any* account of the facts which finds the grievant wanting in instructional skill or classroom management—the areas for which she was non-renewed—then the Board's decision must be found arbitrary and overturned." (Footnote omitted.) (Emphasis in original.)

This properly states a standard of review which incorporates the notion that an arbitrary decision may be one which lacks a rational basis in the record. In applying this test, the arbitrator reviewed and weighed the testimony supporting the Board's conclusion that Domoe's work in certain areas was "unsatisfactory." The arbitrator noted that, of the three persons who recommended that Domoe's contract not be renewed, one testified that her work was satisfactory, another testified he was "neutral" about her performance, and the third gave inconsistent and inconclusive testimony. After reviewing the remainder of the record, the arbitrator found that there was no clear and substantial evidence to support the Board's decision. Furthermore, the arbitrator noted that several witnesses testified favorably regarding Domoe's competence as a teacher.

We conclude that the arbitrator acted within his authority in reviewing the record to determine whether the Board had a rational basis for its decision. We cannot say that the arbitrator erred in deciding that one appropriate way to ascertain whether the Board's decision was arbitrary was to determine whether there was any clear and substantial evidence to support the decision. Finding none in his review of the record, the arbitrator was entirely within his authority to determine on this basis that the Board's decision was arbitrary. We note that in reaching this determination the arbitrator was not deciding whether the Board's decision not to

renew Domoe's contract was right or wrong. The arbitrator merely found that the record presented to him supported the conclusion that the absence of clear and substantial evidence to support the discharge made the Board's nonrenewal decision arbitrary. Therefore, the arbitrator did not substitute his discretion for that of the Board.

The arbitrator also pointed out that the Board failed to show that it had considered the conflicts in the testimony. As noted earlier, arbitrary action can be "the result of an unconsidered . . . choice of conduct and not the result of the 'winnowing and sifting' process." *Olson,* 28 Wis. 2d at 239. We conclude that the arbitrator correctly viewed the Board's failure to articulate the basis for its decision as evidence that the Board's decision was "unconsidered" and, hence, arbitrary. We again note that the Board could have eliminated this as a basis for the arbitrator's decision had it simply made findings and conclusions showing that it had reviewed and considered the testimony in the record.

We emphasize that, applying the rule enunciated in prior decisions of this court, we need not reach the merits of the arbitrator's decision. Thus, we do not address the issue whether the arbitrator's decision, finding the Board's action to be arbitary, was correct or not. *See Joint School District No. 10 v. Jefferson Education Asso.,* 78 Wis. 2d 94, 117, 253 N.W.2d 536 (1977). We hold only that the arbitrator did not exceed his authority when he reviewed the record to determine whether it supplied a rational basis for the Board's decision. Therefore, the court of appeals erred in deciding that the circuit court properly vacated the arbitrator's award.

*By the Court.*—The decision of the court of appeals is reversed.