BOARD OF SCHOOL DIRECTORS OF the CITY OF MILWAUKEE; Kristine D. Leopold, as a Member of the Board of School Directors of the City of Milwaukee and as parent and next friend of Cassandra R. Leopold, Christopher Leopold; Joyce P. Mallory, as a Member of the Board of School Directors of the City of Milwaukee and as parent and next friend of Damien Warren Mallory, Plaintiffs,

v.

STATE OF WISCONSIN; Anthony S. Earl, in his official capacity as Governor of the State of Wisconsin; Herbert S. Grover, in his official capacity as State Superintendent of Public Instruction; Agency School Committee of CESA 19; Virginia Stolhand, in her official capacity as President of the Agency School Committee of CESA 19; Cooperative Educational Service Agency 19; William D. Bergum, in his official capacity as Executive Administrator of CESA 19; Paule Kolff, in her official capacity as chairperson of the CESA 19 Board of Control; Board of Education of Brown Deer School District; Board of Education of Cudahy School District; Board of Education of Elmbrook School District; Board of Education of Fox Point Joint No. 2 School District; Board of Education of Fox Point Joint No. 8 School District; Board of Education of Franklin School District; Board of Education of Germantown School District; Board of Education of Glendale Joint No. 1 School District; Board of Education of Greendale School District; Board of Education of Greenfield School District; Board of Education of Hamilton School District; Board of Education of Menomonee Falls School District; Board of Education of Mequon-Thiensville School District; Board of Education of Muskego-Norway School District; Board of Education of New Berlin School District; Board of Education of Nicolet Union High School District; Board of Education of Oak Creek-Franklin School District; Board of Education of

St. Francis School District; Board of Education of Shorewood School District; Board of Education of South Milwaukee School District; Board of Education of Wauwatosa School District; Board of Education of West Allis School District; Board of Education of Whitefish Bay School District; Board of Education of Whitnall School District, Defendants.

No. 84–C–877.

United States District Court, E.D. Wisconsin.

April 29, 1985.

Irvin B. Charne, Charne, Glassner, Tehan, Clancy & Taitelman, S.C., Milwaukee, Wis., David S. Tatel, Allen R. Snyder, Ho-

gan & Hartson, Washington, D.C., for plaintiffs.

Edward S. Marion, Madison, Wis., Thomas J. Arenz, Charles H. Bohl, Frisch, Dudek and Slattery, Ltd., Mark E. Vetter, Harney B. Stover, Jr., Davis & Kuelthau, S.C., Thomas L. Shriner, Jr., Foley & Lardner, Timothy E. Hawks, Shneidman, Myers, Dowling, Blumenfield, William J. Mulligan, Mulcahy & Wherry, S.C., Michael J. Spector, Ralph A. Weber, Quarles & Brady, Warren L. Kreunen, Timothy G. Dugan, William C. Pickering, von Briesen & Redmond, S.C., Milwaukee, Wis., Juan Colas, Robert J. Mussallem, Robert E. Lindquist, Madison, Wis., Lloyd A. Barbee, William H. Lynch, Curry First, Perry, First, Reiher, Lerner & Quindel, S.C., Milwaukee, Wis., for defendants.

## DECISION AND ORDER

CURRAN, District Judge.

Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today, it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms.

*Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954).

Thirty years after the landmark decision in *Brown v. Board of Education,* the Board of School Directors of the City of Milwaukee filed this school desegregation lawsuit seeking injunctive and declaratory relief, including an interdistrict remedy. The plaintiffs allege that the defendants created and maintained a metropolitan-wide racially dual structure of education, thereby giving rise to a cause of action under: the United States Constitution, article VI, clause 2 [1] and the Thirteenth [2] and Fourteenth [3] Amendments; 42 U.S.C. §§ 1981,[4] 1983,[5] 1985,[6] 1988 [7] & 2000d [8]; the Wiscon-

---

1. U.S. Const. art VI, cl. 2 provides:
 This constitution, and the laws of the United States which shall be made in pursuant thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding.

2. U.S. Const. amend. XIII provides:
 Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
 Section 2. Congress shall have power to enforce this article by appropriate legislation.

3. U.S. Const. amend. XIV, § 1 provides:
 All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

4. 42 U.S.C. § 1981 provides:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

5. 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

sin Constitution, article I, section 1 [9] and article X, section 3 [10]; and sections 116.-51(2) [11] and 118.13 [12] of the Wisconsin Statutes. Jurisdiction over the parties and sub-

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**6.** 42 U.S.C. § 1985 provides:

(1) If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**7.** 42 U.S.C. § 1988 provides:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statute of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**8.** 42 U.S.C. § 2000d provides:

No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

**9.** Wis. Const. art. I, § 1 provides:

All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed.

**10.** Wis. Const. art. X, § 3 provides:

ject matter of their claims is predicated upon 28 U.S.C. §§ 1331(a), 1343(3) & (4), 2201, 2202, and pendent jurisdiction with respect to the state law causes of action.

On July 26, 1984, the plaintiffs filed an Amended Complaint which added as plaintiffs two members of the Board who are also suing as parents and next friends of three minor plaintiffs. In the Preliminary Statement of their Amended Complaint the plaintiffs set forth the bases and objectives of their lawsuit:

1. This complaint requests declaratory and injunctive relief to redress the deprivation under color of state law of the rights, privileges, and immunities secured by the Constitutions and laws of the United States and the State of Wisconsin to the plaintiffs and the schoolchildren of the City of Milwaukee. It seeks to remedy the illegal racial segregation and the resulting inequality of educational opportunity and metropolitan-wide ra-

cially dual structure of education created and maintained by defendants in the Milwaukee metropolitan area.

2. As set forth in detail below, defendants and their predecessors have cooperated for many years to isolate and confine Milwaukee area black students within the City of Milwaukee and to foster and maintain segregation and inequality of educational opportunity in the metropolitan area. In conjunction with governmental actions which have created and maintained residential segregation in the Milwaukee area, this conduct has resulted in the creation and maintenance of a racially dual metropolitan-wide structure of public education in which black students are confined almost exclusively to the City of Milwaukee. Over 95% of the 44,000 black students in the Milwaukee metropolitan area go to school in Milwaukee. Despite significant desegregation efforts in the city since this Court's 1976 order, the Milwaukee public schools are almost 50% black, with 18

The legislature shall provide by law for the establishment of district schools, which shall be as nearly uniform as practicable; and such schools shall be free and without charge for tuition to all children between the ages of 4 and 20 years; and no sectarian instruction shall be allowed therein; but the legislature by law may, for the purpose of religious instruction outside the district schools, authorize the release of students during regular school hours.

11. Wis.Stat. § 116.51(2) (1981–1982) (repealed 1984) provides:

The committee shall study and evaluate the existing school district structure evolving from the former county school committee plans and subsequent modifications to determine if the goals of equal and improved educational opportunities for all children within the agency territory have been attained. Where needs exist for further school district reorganization, there shall be formulated a plan to strengthen the administration districts of the agency territory to operate a comprehensive school program of offerings and services which meet the present and future educational needs of the children of the state and which can function with efficiency and at a justifiable cost to the local taxpayers and to the state.

12. Wis.Stat. § 118.13 (1983–1984) provides:

No person may be excluded or discriminated against in admission to any public school or in obtaining the advantages, privileges and course

of study of such public school on account of sex, race, religion, physical condition, including pregnancy, developmental disability as defined in s. 51.01(5) or national origin. No separate school or department may be maintained for any person on account of sex, race, religion or national origin. Any member of a school board who votes to exclude from any public school any child on account of sex, race, religion, physical condition, including pregnancy, developmental disability as defined in s. 51.01(5) or national origin may be fined not more than $100 or imprisoned not less than 30 days nor more than 6 months or both. The superintendent may promulgate rules necessary to carry out the purposes of this section.

(2) No person may be denied, on the basis of sex, the opportunity to participate in interscholastic, intramural or club sports or any physical education activity offered in a public school, as provided in 20 USC 1681. No person may be denied, on the basis of sex, necessary facilities, equipment, instruction or financial support for such sport or activity, as provided in 20 USC 1681.

(3) Each school board shall make available to any school age mother who is a resident of the school district program modifications and services that will enable the pupil to continue her education. In this subsection, "school age mother" has the meaning specified in s. 115.91.

schools over 80% black. By comparison, the suburban school districts around Milwaukee are over 96% white, and all but two are less than 5% black.

3. Residential statistics reflect similar segregation in the Milwaukee area. Over 97% of the area's 150,000 black residents live in the city. Although the City of Milwaukee is over 23% black, the surrounding suburbs are less than 0.05% black. Measured in terms of black concentration in central city areas, Milwaukee is the second most segregated large metropolitan area in the country. Such residential segregation, which has been fostered and maintained as described below by government agencies, including those under the control of the State of Wisconsin, has contributed significantly to the creation and maintenance of school segregation in the metropolitan area and has impeded court-ordered desegregation of the Milwaukee public schools.

4. For the reasons summarily set out above and detailed below, plaintiffs request that this Court declare the public schools in the Milwaukee metropolitan area to be unconstitutionally segregated, and order development and implementation of a desegregation plan for the Milwaukee metropolitan area that will eliminate the racial isolation, inequality of educational opportunity, and racially dual structure of education which continue to exist in the Milwaukee metropolitan area today.

Amended Complaint at ¶¶ 2–4.

In lieu of filing answers, the defendants have all brought motions to dismiss pursuant to Federal Rule of Civil Procedure 12. While each of the defendants reserves the right to defend individually, they have filed their motions to dismiss based on an alignment into three groups: (1) the twenty-four suburban boards of education (Suburban Defendants); (2) the State of Wisconsin, its Governor Anthony S. Earl, and its State Superintendent of Public Instruction, Herbert S. Grover (State Defendants); and (3) Agency School Committee of CESA 19 and its president Virginia Stolhand, Cooperative Educational Service Agency 19 and its ex-

ecutive administrator William D. Bergum and the chairperson of its board of control, Paule Kolff (Regional Defendants).

The twenty-four Suburban Defendants are moving to dismiss on the ground that the plaintiffs lack standing. *See* Federal Rule of Civil Procedure 12(b)(1). The State Defendants agree that the plaintiffs lack standing and also say that the court lacks jurisdiction over them and that the complaint fails to state a claim upon which relief can be granted. *See* Federal Rule of Civil Procedure 12(b)(1) & (6). The Regional Defendants are moving the court to dismiss the claims against them on the ground that they do not possess the capacity to be sued. *See* Federal Rules of Civil Procedure 9(a), 12, 17(b) and 25(d). These motions are fully briefed and ready for decision. The court will also consider the Supplementary Memorandum of Twenty-Four Suburban School Boards in Support of Motion to Dismiss Amended Complaint, as is permissible when ruling on a motion to dismiss. *See* *Trecker v. Scag,* 481 F.Supp. 861, 864 (E.D. Wis.1979).

Chief Justice Burger has summarized the law a district court must follow in considering a motion to dismiss:

When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Although the Supreme Court has said that a

complaint should never be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), this edict has never been interpreted literally. *See Sutliff, Inc. v. Donovan Companies,* 727 F.2d 648, 654 (7th Cir.1984). In practice, a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. *Id.* at 654. But dismissal is a drastic result and should be granted sparingly in complex cases. *See Car Carriers, Inc. v. Ford Motor Company,* 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1975).

The court must now apply these general principals of law to the motions of the Suburban Defendants, the State Defendants and the Regional Defendants in turn.

## MOTIONS TO DISMISS

### A. Suburban Defendants

#### 1. Positions of the Parties

The twenty-four suburban school boards have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the plaintiffs lack standing to invoke this court's subject matter jurisdiction. Article III, section 2 of the United States Constitution [13] confines federal court jurisdiction to cases and controversies. The Suburban Defendants maintain that the Board does not meet the constitutional or prudential requirements of the standing doctrine which determines whether a case or controversy exists. They also say that the Board has no authority under state law to commence this action because a Wisconsin school district and its officers possess only the express powers granted by statute and such implied powers as are necessary to execute the express powers. *See Schaut v. Joint School District,* 191 Wis. 104, 107, 210 N.W. 270, 272 (1926). Chapter 119 of the Wisconsin Statutes, which charters the Milwaukee Board, grants no express power to sue.

Turning to the individual board members and their children, the Suburban Defendants object that they were improperly joined as plaintiffs by amending the complaint rather than by seeking leave of court. *See* Federal Rule of Civil Procedure 21. They label the joinder of these individuals as "collusive," and say it was done only to give the court a basis for jurisdiction. Furthermore, they point out that the Amended Complaint fails to identify the children as to age, race and whether they currently attend Milwaukee public schools. They assert that these children should not be allowed to serve as mere symbols for all other Milwaukee school children.

In response, the Board cites cases in which other federal courts have recognized that local school boards do have standing to bring suits in furtherance of their affirmative duty to eliminate segregation. *See, e.g., Little Rock School District v. Pulaski County Special School District,* 584 F.Supp. 328, 352 (E.D.Ark.1984). The Board also shows instances where other jurisdictions have allowed school boards to enforce the rights of the children within their school systems. *See, e.g., Akron Board of Education v. State Board of Education,* 490 F.2d 1285, 1290 (6th Cir.), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).

The two Board members assert that they have standing to seek relief for being prevented from carrying out their constitutional obligations. *See, e.g., Brewer v. Hoxie*

---

**13.** U.S. Const. art. III, § 2 provides, in part:

The judicial power shall extend to all cases, in law and equity, arising under this constitution, the laws of the United States, and treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, other public ministers and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more States, between a state and citizens of another state, between citizens of different States, between citizens of the same state claiming lands under grant of different States, and between a state, or the citizens thereof, and foreign States, citizens or subjects.

90

*School District*, 238 F.2d 91, 98–101 (8th Cir.1956). Suing as parents also gives them a direct and personal stake in this controversy.

According to the plaintiffs, joinder of the boardmembers and their children was procedurally proper under Federal Rule of Civil Procedure 15(a), which allows a plaintiff to amend a complaint once without leave of court if no answer has been filed. They say that, with leave of court, they could again amend the complaint to allege that plaintiff Damien Warren Mallory is a ten-year-old black child who attends public school in the City of Milwaukee and that plaintiffs Cassandra and Christopher Leopold are ages four and six respectively, are white, and also attend Milwaukee public schools.

The plaintiffs challenge the suburbs' arguments regarding the Board's lack of statutory authority to sue by pointing out that Wisconsin courts have routinely adjudicated cases in which the Board was a party. *See, e.g., Milwaukee Board of School Directors v. Milwaukee Teachers Association*, 93 Wis.2d 415, 287 N.W.2d 131 (1980). The authority of the Board to sue and be sued is also implied by section 119.16 of the Wisconsin Statutes, which enumerates the powers of the Board to control and manage school affairs. *See also Racine Fire and Police Commission v. Stanfield*, 70 Wis.2d 395, 401–02, 234 N.W.2d 307, 310–11 (1975) (the power to sue and be sued is implied from many enumerated duties).

In reply, the Suburban Defendants argue that the case law cited by the plaintiffs does not support their position and that it is outdated because there has been an increased tightening of standing requirements in the federal courts. *See, e.g. Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *HOPE, Inc. v. County of DuPage Illinois*, 738 F.2d 797 (7th Cir.1984).

2. Decision

■ The suburbs' challenge to the plaintiffs' standing to sue raises a threshold issue which must be resolved before this litigation can continue. However, in this case the court can do no more than rule on the basis of the pleadings. Often, determinations of standing are made only after extensive discovery, hearings, and even a trial on the merits. *See, e.g., HOPE, Inc. v. County of DuPage Illinois*, 738 F.2d 797 (7th Cir.1984).

The concept of "standing" has been described as "among the most amorphous in the entire domain of public law." *Hearings on S. 2097, before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary*, 89th Cong., 2d Sess., pt. 2 at 498 (1966). The United States Supreme Court has cautioned that "[g]eneralizations about standing to sue are largely worthless as such." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Still, the doctrine continues to evolve and Justice O'Connor recently observed that: "The Art. III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of [the jurisdictional] doctrines." *Allen v. Wright*, 468 U.S. 837, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

Article III of the United States Constitution confines the federal courts to adjudicating actual cases and controversies. The case-or-controversy doctrines which cluster about Article III place constitutional and prudential limits on the judiciary pursuant to the idea of separation of powers on which the federal government is founded. One of these doctrines is "standing." "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). The requirement of standing has a core component derived directly from the Constitution which mandates that a plaintiff must allege:

1. a distinct and palpable personal injury

2. an injury fairly traceable to the defendant's unlawful conduct

3. an injury likely to be redressed by the requested relief

*See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The prudential component of this doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as:

1. a litigant cannot raise another person's legal rights;

2. a court will not adjudicate generalized grievances more appropriately addressed in the representative branches; and

3. a plaintiff's complaint must fall within the zone of interests protected by the law invoked.

*Id.* at 474–75, 102 S.Ct. at 759–60.

The scope of these concerns cannot be defined so as to make application of the constitutional standing requirement a mechanical exercise. *Allen v. Wright,* 104 S.Ct. at 3325. However, in *Allen,* Justice O'Connor suggests a methodology for resolving standing issues on a case-by-case basis:

> The absence of precise definitions, however, as this Court's extensive body of case law on standing illustrates, hardly leaves courts at sea in applying the law of standing. Like most legal notions, the standing concepts have gained considerable definition from developing case law. In many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases. More important, the law of Art. III standing is built on a single basic idea—the idea of separation of powers. It is this fact which makes possible the gradual clarification of the law through judicial application. Of course, both federal and state courts have long experience in applying and elaborating in numerous contexts the pervasive and fundamental notion of separation of powers.

> Determining standing in a particular case may be facilitated by clarifying principles or even clean rules developed in prior cases. Typically, however, the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative? These questions and any others relevant to the standing inquiry must be answered by reference to the Art. III notion that federal courts may exercise power only "in the last resort, and as a necessity," and only when adjudication is "consistent with a system of separated powers and [the dispute is one] traditionally thought to be capable of resolution through the judicial process."

*Id.* (citations omitted).

(a) Standing of the Board Members and Children

Using this mode of analysis, the court will first address the simpler issue of whether the individual plaintiffs—the two school board members and the three children—have standing to sue. The gravamen of their complaint is that the acts and omissions of the defendants have created and maintained a racially dual school system throughout the Milwaukee metropolitan area which has denied them the equal protection of the laws. In *Allen,* the Court said that the "diminished ability to receive an education in a racially integrated school —is, beyond any doubt, not only judicially cognizable but, as shown by cases from *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) to *Bob Jones University v. United States,* 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983), one of the most serious injuries recognized in our legal system." *Allen v. Wright,* 104 S.Ct. at 3328.

Consequently, there can be no serious doubt that the three children or the two board members, in their roles as parents and next friends, have alleged injuries sufficiently direct and palpable to satisfy the first prong of the constitutional test. So long as a plaintiff has alleged a distinct and palpable injury to himself, the personal injury requirement is satisfied, even if the injury is also shared by a large class of other possible litigants and the plaintiff may invoke the general public interest in support of his claim. *See generally United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

Next, the court must determine whether these injuries are fairly traceable to the conduct of the Suburban Defendants. The Amended Complaint alleges a wide range of intentional interdistrict constitutional violations with interdistrict effects in which the Suburban Defendants participated. These allegations must be construed as true when considering a motion to dismiss. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Among other things, the complained-of conduct included:

[E]xcluding Milwaukee from and otherwise impeding interdistrict school reorganization efforts; violating specific affirmative obligations under State law to undertake reorganization to promote equal educational opportunity and rejecting proposals which would have had such a desegregative effect; requiring the Milwaukee Board to pay transportation costs for Milwaukee students attending city and suburban private schools despite the fact that such assistance has impeded desegregation; excluding Milwaukee from interdistrict activities in such areas as exceptional and vocational education; refusing to permit significant numbers of black students from the city to attend school in the suburbs despite the availability of financial subsidies and the excess capacity of the suburban schools; committing intradistrict educational violations with interdistrict effects; maintaining segregation and inequality of educational opportunity within Milwaukee by a series of actions and failures to act; and reinforcing governmental action promoting residential racial segregation which has contributed to the creation and maintenance of segregated schools.

Amended Complaint at ¶ 15 (citations omitted).

Paragraphs 19, 20 and 21 of the Amended Complaint set forth specific instances of conduct on the part of the Suburban Defendants which allegedly violated the plaintiffs' constitutional rights. For example, paragraph 19 states that:

For a number of years, the Suburban School District Defendants have, with the support of the State and Regional Defendants, undertaken a series of interdistrict transfers of students for various educational purposes, such as vocational and exceptional education. These interdistrict transfer programs have intentionally excluded Milwaukee, despite the fact that it has required suburban students to travel past racially integrated Milwaukee schools in order to attend other virtually all-white suburban schools. This conduct has further created and perpetuated racial isolation and segregation in Milwaukee area schools.

Amended Complaint at ¶ 19.

For purposes of withstanding this motion to dismiss, the court finds that the injuries alleged by the individual plaintiffs are fairly traceable to the just-described conduct of the Suburban Defendants. The links in the chain of causation between the action or inaction of the suburban school boards and the denial of equal protection to the plaintiffs are strong enough to sustain the plaintiffs' standing. This case can be distinguished from taxpayer suits such as *Allen v. Wright*, where the causal link was found to be too attenuated. *Allen*, 104 S.Ct. at 3329. The Court there considered it purely speculative as to whether withdrawal of a tax exemption from any particular private school would lead a school to change its segregation policies. *Id.* Here, however,

limiting black students from participation in the Chapter 220 program,[14] for example, could directly contribute toward maintaining a racial imbalance between city and suburb.

The third constitutional consideration is whether the plaintiffs have alleged an injury likely to be redressed by the requested relief. Again, considering the allegations in the Amended Complaint to be true, it is arguable that the declaratory and injunctive relief sought by these plaintiffs—an interdistrict desegregation order—might alleviate the injurious effects of the present dual school systems. Plainly, merging the almost fifty percent black Milwaukee school population with the ninety-five percent white suburban population would promote schoolroom integration. The legal test is not whether all of the relief requested would be effective, but whether any relief can be afforded. *See School District of Kansas City Missouri v. State of Missouri,* 460 F.Supp. 421, 430 (W.D.Mo.1978), *appeal dismissed,* 592 F.2d 493 (8th Cir. 1979). Thus, the plaintiffs have also met the third constitutional requirement for standing.

These individuals do not claim to be raising the rights of third parties, nor are they merely raising generalized grievances. Moreover, their claims clearly fall within the zone of interests protected by the Fourteenth Amendment, so none of the prudential concerns would militate against the court recognizing their standing to present evidence on their claims.

■ The Suburban Defendants have also objected that these plaintiffs were improperly added to this lawsuit by an amendment to the complaint rather than by an order of the court pursuant to Federal Rule of Civil Procedure 21. Although there is an apparent conflict between Rule 21 and Rule 15(a), which permits amendment before the defendant has answered, the Seventh Circuit does permit parties to be added by amending the pleadings. *See La Batt v. Twomey,* 513 F.2d 641, 650 (7th Cir.1975).

14. *See* Wis.Stat. ch. 121, subch. IV (1983–1984).

The court agrees that it was a glaring oversight for the plaintiffs to omit the facts regarding the age, race and school attendance upon which the standing of the children can be predicated. Although the plaintiffs supply this information in their responsive brief, facts mentioned in a brief cannot be considered by the court. *See Car Carriers, Inc. v. Ford Motor Company,* 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). However, this defect is not fatal. "[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). In this case the court will allow the plaintiffs to amend the complaint to include facts identifying the age, race, residence and place of school attendance of the minors.

Because these individuals have met the constitutional requirements for standing, the court will not dismiss the claims of Kristine D. Leopold as parent and next friend of Cassandra R. Leopold and Christopher Leopold or of Joyce P. Mallory as parent and next friend of Damien Warren Mallory against the Suburban Defendants. The claims of Kristine Leopold and Joyce Mallory as members of the Board will be discussed below.

■ Next, the State Defendants say that the plaintiffs have failed to state a claim upon which relief can be granted because they have failed to show that the defendants *intentionally* violated their constitutional rights. The defendants point out that Wisconsin never had laws on the books requiring segregated schools and that public education in this state is subject to a high degree of local control. "[O]n a day to day basis, the State Defendants do not have a hands-on role in regard to desegregation efforts." Brief in Support of Motion to Dismiss Amended Complaint Against State Defendants at 25.

It has been long-settled within the context of school desegregation cases that the plaintiffs must allege intentional constitutional violations on the part of the defendants. *See, e.g., Keyes v. School District No. 1,* 413 U.S. 189, 205, 93 S.Ct. 2686, 2695, 37 L.Ed.2d 548 (1973); *United States v. Board of School Commissioners of the City of Indianapolis,* 573 F.2d 400, 408 (7th Cir.), *cert. denied sub nom. Bowen v. United States,* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978). The plaintiffs have fulfilled this requirement by alleging that the State Defendants intentionally excluded Milwaukee from interdistrict transfer programs. *See* Amended Complaint at ¶ 19. The Amended Complaint also states that:

> With full knowledge of intentional school segregation in the Milwaukee area and their duty to ensure the provision of equal educational opportunities, the State Defendants have further perpetuated and reinforced such segregation and inequality of educational opportunity through a pattern of actions and failures to act. This has included, for example, failing and refusing to enforce Wisconsin statutory prohibitions against discrimination in education; issuing an Attorney General's opinion in 1976 (which has recently been withdrawn) claiming that the Department of Public Instruction had no authority to issue desegregation rules and guidelines, despite clear statutory language to the contrary; withdrawing proposed desegregation guidelines and suspending virtually all desegregation-related activity pursuant to the 1976 Attorney General opinion; and providing continued funding and support to Milwaukee area school districts within the segregated metropolitan structure of education while taking no action to seek to end segregation.

Amended Complaint at ¶ 22.

In general, arguments predicated on lack of intent, when intent has been explicitly alleged, are rarely successful when a motion to dismiss has been filed in lieu of an answer at the inception of a complex lawsuit. *See Car Carriers, Inc.,* 745 F.2d at 1106. Such a determination can usually be made only after an opportunity for discovery, evidentiary hearings or even a trial. *See generally Board of School Commissioners of the City of Indianapolis,* 573 F.2d 400 (determination of intent could not be made after ten years of litigation). The State Defendants have not submitted any affidavits or other evidence in connection with their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), so the plaintiffs have no obligation at this point to refute their arguments by producing admissible evidence. Having decided that the State Defendants' Rule 12(b)(6) motion is premature, the court will not dismiss the Amended Complaint for failure to state a claim.

(b) Standing of the Board of School Directors of the City of Milwaukee

██ The defendants' challenge to the standing of the Board is more problematical than that to the standing of the individuals. Typically, school boards have been defendants in school desegregation cases. But this might be termed a "second generation" case in which the same school board which the defendant in the prior action is now the plaintiff. *See Amos v. Board of School Directors of the City of Milwaukee,* 408 F.Supp. 765 (E.D.Wis.1976). This situation arises because the Board asserts that it has gone as far as it can on its own to eliminate segregation and its vestiges from the Milwaukee district. Now it claims the defendants are causing the Board to fail in its duty to offer equal educational opportunities to all Milwaukee students. If the Board's allegations are true, Milwaukee has unfortunately fulfilled the prediction made by Chief Justice Burger in *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 31, 91 S.Ct. 1267, 1283, 28 L.Ed.2d 554 (1971), where he said that: "At some point, these school authorities and others like them should have achieved full compliance with this Court's decision in *Brown I* . . . . It does not follow that the communities served by such systems will remain demo-

graphically stable, for in a growing, mobile society, few will do so." In the face of the Milwaukee Board's allegations, the court must again use the analysis set forth in *Allen v. Wright* to decide whether the Board has standing to sue the Suburban Defendants for an interdistrict remedy.

The particular injury which the Board is alleging is that it has been prevented from carrying out its constitutional duty to desegregate the Milwaukee public school because of the conduct of of defendants which is in contravention of the Supremacy Clause of the United States Constitution. U.S. Const., art. VI, cl. 2. Following the decision in *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (*Brown I*), courts of this country have recognized that those entrusted with the operation of public school have a duty under the Fourteenth Amendment to eliminate segregation. *See Milliken v. Bradley,* 433 U.S. 267, 289–90, 97 S.Ct. 2749, 2761–62, 53 L.Ed.2d 745 (1977) (*Milliken II*). Preventing a school board from performing this explicit duty is not an injury which could be termed "conjectural." Neither can the plaintiffs' factual and statistical depiction of the still segregated Milwaukee public school be termed "abstract" or "hypothetical." While it is true that court supervision of the previous desegregation order expired a few days after this complaint was filed, *see Armstrong v. Board of School Directors of the City of Milwaukee,* 471 F.Supp. 800, 818 (E.D.Wis.1979), the duty of the Board to eliminate segregation and its vestiges did not expire and will never expire.

Conversely, the Suburban Defendants say that they have no duty to rectify racial imbalance in another school district. *See Goldsboro City Board of Education v. Wayne County Board of Education,* 745 F.2d 324, 328 (4th Cir.1984). They deny that they are impeding the ability of the Milwaukee Board to carry out its constitutional obligations to desegregate its schools in any concrete way. They say that the Milwaukee Board's injuries are not fairly traceable to the suburban boards because the quality of education and racial composi-

tion of the schools is dependent on an infinite number of variables such as housing patterns, economic opportunities and human nature—all of which are beyond the control and influence of the suburban boards. However, the law in the Seventh Circuit is set squarely against this sort of buck passing:

> The suburban school officials may not maintain that their districts should be excluded from an interdistrict remedy if they are found innocent of committing any constitutional violations because they should not be held responsible for the acts of the state legislators or other state subdivisions such as a local housing authority or a zoning board. The commands of the Fourteenth Amendment are directed at a state and cannot be avoided by a fragmentation of responsibility among various agents.

*United States v. Board of School Commissioners of the City of Indianapolis,* 573 F.2d 400, 410 (7th Cir.), *cert. denied sub nom. Bowen v. United States,* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 16 (1978). In school desegregation litigation in St. Louis, the court recommended that the suburban school districts be added as parties because an interdistrict remedy could not be ordered until their rights had been adjudicated. *See Liddell v. Board of Education of the City of St. Louis, Missouri,* 491 F.Supp. 351, 359 (E.D.Mo.1980).

Despite the suburbs' denial of any misconduct toward the Board, the court finds that paragraphs 19, 20 and 21 of the Amended Complaint describe specific ways in which actions of the suburbs thwarted the Board's desegregation efforts. For example, paragraph 20 states that:

> At the same time that these interdistrict transfers have been taking place, the Suburban School District Defendants have been limiting the Chapter 220 program either by prohibiting black students from Milwaukee from attending suburban schools or by imposing arbitrary quotas on their participation in the program, despite excess capacity in suburban districts and the availability of fi-

nancial subsidies under the Chapter 220 program. Suburban School District Defendants have severely limited participation in the Chapter 220 program in other ways, such as prohibiting black students from Milwaukee from attending regular programs and confining them to summer or special programs, and refusing to take effective steps to encourage white suburban youngsters to take part in the program. This conduct has had the purpose and effect of perpetuating and enhancing racial isolation and segregation in the Milwaukee area schools.

Amended Complaint at ¶ 20. At this stage of the litigation allegations such as these show a sufficiently close nexus between the impairment of the Board and the conduct of the suburbs to withstand a motion to dismiss for lack of standing. Likewise, there can be little doubt at this juncture, in the absence of any better proposal, that obtaining injunctive relief from the Suburban Defendants in the form of an interdistrict remedy should enable the Board to desegregate the Milwaukee city schools.

■ Having considered the constitutional requisites of standing in relation to the Board, the court must now address prudential concerns. First, the suburbs point out that the Board is attempting to litigate the equal protection claims of all Milwaukee school children. The plaintiffs consider this a legitimate posture. *See* Plaintiffs' Brief in Opposition to Motions to Dismiss at 5. Generally, it is impermissible to assert third-party standing. In *Warth v. Seldin*, for example, the Supreme Court denied standing to the taxpayers of a town adjoining another town with allegedly racially restrictive zoning laws. 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Court decided that these plaintiffs were not themselves subject to the zoning ordinances, so they could not prosecute the rights of those who were. Although, at times, organizations have been allowed to litigate the claims of their members, *see, e.g., NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), third party standing is denied

when the would-be plaintiff has not alleged its own direct and personal injury. *See, e.g., People Organized for Welfare and Employment Rights (P.O.W.E.R.) v. Thompson*, 727 F.2d 167 (7th Cir.1984). In this circuit:

> [S]tanding in representational capacity requires that the representative litigate on behalf of *members* who would have standing in their own right.... The Supreme Court has *not* seen fit to extend representational capacity standing to entities other than associations which actually represent interests of parties whose affiliation with the representational litigant is that of membership with the representative or substantial equivalent of membership.

*HOPE, Inc. v. County of DuPage, Illinois*, 738 F.2d 797, 814 (7th Cir.1984). The Suburban Defendants maintain that the Milwaukee school children can in no sense be considered "members" of the Board. Based on cases such as *HOPE*, this court must agree, but because the Board has alleged a distinct injury to itself, its standing need not depend on asserting third-party rights. *See Warth*, 422 U.S. at 516, 95 S.Ct. at 2214.

■ Next, the court must decide whether the Board's claim is a generalized grievance more properly addressed to the legislative branch. On the face of the complaint the Board's lawsuit is surely more than "a vehicle for the vindication of the value interests of concerned bystanders." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973). And although the claims are far-reaching and complex, they are not generalized. They specifically relate to identifiable conditions in the Milwaukee metropolitan area schools. The Board's alleged impaired ability to provide integrated schools, together with the drain on the Board's resources "constitutes far more than simply a setback to its abstract social interests." *Havens Realty Corporation v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). And

while the Board's prayer for relief from these conditions could also be addressed to the legislative branch, part of the complaint alleges inaction on the part of state government. The vast body of school desegregation litigation attests to the fact that under similar circumstances the judicial branch has been willing to undertake the task of fashioning remedies for systemic deprivations of equal protection. *See, e.g., Brown v. Board of Education,* 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955) (*Brown II*).

Having performed this analysis, the court is unpersuaded that the Board does not have standing to sue the Suburban Defendants under the criteria set forth in *Allen v. Wright,* 104 S.Ct. 3315 (1984). Consequently, the claims of the Board of School Directors of the City of Milwaukee against the twenty-four suburban boards of education will not be dismissed.

B. State Defendants

The State Defendants have moved the court to dismiss the Amended Complaint filed against them on the grounds: (1) that the plaintiffs lack standing to maintain the lawsuit against them; (2) that the court lacks jurisdiction over them; and (3) that the complaint fails to state a claim against them upon which relief can be granted. *See* Federal Rule of Civil Procedure 12(b)(1) & (6).

The issue of whether the plaintiffs lack standing has been discussed above where the court determined that each of the plaintiffs do have standing to prosecute their claims. The only additional argument raised by the State Defendants is that "the governing body of a school district which is a political subdivision of the state, cannot maintain constitutional claims against the district's creator, the State of Wisconsin." Brief in Support of Motion to Dismiss Amended Complaint Against State Defendants at 11 (footnote omitted). The defendants rely on *Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933), where the Supreme Court said that a state political subdivision lacks standing to assert that a statute of the state of which it is a subdivision is invalid under the United States Constitution.

In this case the Milwaukee School Board, which is admittedly an agent of the state, is not challenging the constitutionality of any state statute. Rather, it is alleging that the State Defendants violated rights guaranteed to the plaintiffs under the *federal* Constitution and laws. The defendants deny that even federal claims are permissible when a state's "internal political organization is at issue." *See Rogers v. Brockette,* 588 F.2d 1057, 1069–70 (5th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979). However, at this stage of the litigation the State Defendants have not demonstrated that Wisconsin's internal political organization is at issue.

Courts dealing with other desegregation cases have found that local school boards have standing to sue the state or another state agency pursuant to the Supremacy Clause. *See* U.S. Const. art. VI, cl. 3. In denying the state's motion to dismiss the crossclaims of the Kansas City, Missouri School District, the Missouri federal court observed that: "[T]he most appropriate litigant to challenge state action, regulation or legislation which contravenes the Supremacy Clause is a party who has been adversely affected by such action, regulation or legislation, either in the enjoyment of his rights and privileges or in the course of his own attempt to obey the Supremacy Clause." *Black v. State of Missouri,* No. 77–0420–CV–W–3, slip op. at 9 (W.D.Mo. June 1, 1981) (Memorandum and Order). In *Kansas City* the court reasoned that, because the local school board was a corporate body, it had the inherent power to sue in order to effectuate its expressly delegated powers. *See School District of Kansas City, Missouri v. State of Missouri,* 460 F.Supp. 421, 444 (W.D.Mo.1978), *appeal dismissed,* 592 F.2d 493 (8th Cir.1979). Because the defendants have not cited any clear-cut Wisconsin law to the contrary, the court will adopt this common-sense *Kansas City* approach and will not dismiss the

claims against the State Defendants because the plaintiffs lack standing.

■ Finally, the State Defendants argue that the plaintiffs' claims against them are barred by the Eleventh Amendment.[15] In general, the Eleventh Amendment acts as a bar to federal jurisdiction over state governments, as such, when they are sued by anyone other than the federal government or another state. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). On a theoretical level the Amendment guarantees the principles of federalism, a concept that encompasses the preservation of state autonomy within the federal system. On a practical level it is employed to prevent raids on state treasuries by private parties. *See generally* Baker, Federalism and the Eleventh Amendment, *U.Colo.L.Rev.* 139 (1977).

One exception to this restriction was carved out in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), where the Supreme Court said that a party could seek prospective injunctive relief from a state officer in that state officials (but not the state itself) could be enjoined by a federal court from enforcing an unconstitutional state statute. *Id.* at 159–60, 28 S.Ct. at 453–54. Later, in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court held that when a plaintiff alleging a violation of federal law seeks relief against a state official, the federal court may enjoin the officer's conduct, but cannot award retroactive monetary relief. *Id.* at 677, 94 S.Ct. at 1362. But in the context of school desegregation cases, the Supreme Court has decreed that the permissible relief can include a system-wide desegregation order even where the prospective compliance ordered will require payment of state funds in the future as a necessary consequence of compliance in the future with a substantive federal-question determination. *See Milliken v. Bradley*, 433 U.S. 267, 289–90, 97 S.Ct. 2749, 2761–62, 53 L.Ed.2d 745 (*Milliken II*) (1977).

The decisional law contains no exceptions allowing private parties or state agencies to sue a state directly in federal court unless such authority is granted by federal statute or the state has waived its immunity. The court finds no indication of waiver by the State of Wisconsin in this case, and the Supreme Court has decided that a civil rights statute such as 42 U.S.C. § 1983 contains no grant of authority to sue a state directly. *See Quern v. Jordan*, 440 U.S. 332, 342, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). *See also Toledo, Peoria & Western Railroad Company v. State of Illinois*, 744 F.2d 1296, 1298–99 (7th Cir.1984), *cert. denied*, 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985).

■ The plaintiffs in this case are seeking only prospective equitable relief from the State, the Governor and the Superintendent. Thus, under the Eleventh Amendment and the exception of *Ex Parte Young*, they could bring their claims for declaratory and injunctive relief against the Governor and the Superintendent, but not against the State itself. Accordingly, all claims against the State of Wisconsin will be dismissed.

■ The State Defendants go on to argue that the claims against the state officials should also be barred. They rely on *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), where the Supreme Court said that a federal trial court cannot award prospective injunctive relief when the claim is that the defendants violated state law, even when the state law claim is brought into federal court under pendent jurisdiction. *Id.* at 910–11. The Governor and the Superintendent also argue that they cannot be sued because, based on the facts alleged, the State is still the real party in interest.

The defendants' first argument has merit in that the plaintiffs are alleging violations of Article I, section 1 and Article X, section

---

**15.** U.S. Const. amend. XI provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

3 of the Wisconsin Constitution and of sections 116.51(2) and 118.13 of the Wisconsin Statutes. Under *Pennhurst*, the plaintiffs could not obtain relief against the state officials predicated on violations of state law even if the state law is alleged to be unconstitutional. The *Pennhurst* Court also said that the Eleventh Amendment prohibits a federal district court from ordering state officials to conform their conduct to state law even when there is no claim that the state law is unconstitutional. *Id.* at 911.

Although the plaintiffs here have included pendent state claims, the gravamen of their complaint is that these defendants violated the *federal* Constitution and laws. Their claims for injunctive relief based on federal law are still cognizable against state officials, for *Pennhurst* indicates that where injunctive relief is sought on both federal constitutional and state grounds, a federal court can adjudicate the federal issue without reaching the state claim. The *Pennhurst* Court also noted that a suit challenging the constitutionality of a state officer's conduct is not actually one against the state, because an official who acts unconstitutionally is "stripped of his official or representative character." *Id.* at 909, quoting *Ex Parte Young*, 209 U.S. at 160, 28 S.Ct. at 454.

 Having already decided to dismiss all claims against the State of Wisconsin, the court also recognizes that, in keeping with *Pennhurst*, all the pendent state claims made against the Governor and the Superintendent must also be dismissed. The plaintiffs may proceed against these two state officials on the basis of their federal claims. However, this does not mean that violations of state law cannot be introduced into evidence as part of the plaintiffs' case. Violations of state law leading to known segregative consequences are probative of the evidence of intent to violate federal constitutional obligations. *See Diaz v. San Jose Unified School District*, 733 F.2d 660, 667 n. 7 (9th Cir.1984).

## C. Regional Defendants

 The Regional Defendants are moving the court to dismiss the claims against them for lack of capacity pursuant to Federal Rules of Civil Procedure 9(a), 12, 17(b) and 25(d). They have submitted the affidavits of defendants William D. Bergum and Paule Kolff, who state that the two agency defendants—Agency School Committee of CESA 19 and Cooperative Educational Service Agency 19—went out of existence on July 1, 1984—three days after this lawsuit was commenced. *See* Act of July 1, 1983, ch. 116, 1983 Wis.Laws Act 27, § 1446 (effective July 1, 1984). It is the position of the Regional Defendants that the nonexistence of these agencies together with the consequent lack of official capacity of the individuals, Virginia Stolhand, William Bergum and Paule Kolff, deprives them all of capacity to be sued.

The plaintiffs do not deny that the status of these defendants has changed. They suggest employing a theory of successor liability, saying that, if the Regional Defendants "are dismissed as technical defendants, the order dismissing them should, therefore, clearly identify their successors—the State or one of its agencies—that are fully responsible for all discovery and for compliance with any remedial order." Plaintiffs' Brief in Opposition to Motions to Dismiss at 24.

On the basis of the record of this case, the court is not able to name successors for these defendants, nor is it the function of the court to identify defendants to be sued. The court denied all the motions for protective orders brought by the defendants and ordered discovery to proceed. By this time, therefore, the plaintiffs should be able to identify the successors, if any, to the nonexistent Regional Defendants; so although the claims against the named Regional Defendants will be dismissed for lack of capacity, the plaintiffs will be given leave to amend their complaint to name their successors. *See* Federal Rules of Civil Procedure 15, 19 and 25(d).

## SUMMARY OF ORDERS

For the reasons discussed above, the court ORDERS that:

1. The Motion to Dismiss filed by the Boards of Education of the School Districts of Cudahy, Fox Point-Bayside, Franklin, Menomonee Falls, Oak Creek-Franklin and South Milwaukee on August 31, 1984, IS DENIED.

2. The Motion to Dismiss filed by the School District of West Allis-West Milwaukee on August 31, 1984, IS DENIED.

3. The Motion to Dismiss filed by the School Boards of the School Districts of Brown Deer, Greendale, Greenfield, Mequon-Thiensville, St. Francis, Shorewood, and Whitefish Bay on August 31, 1984, IS DENIED.

4. The Motion to Dismiss filed by the School District of Elmbrook and the School Board of the Wauwatosa School District on August 31, 1984, IS DENIED.

5. The Motion to Dismiss filed by the School Districts of Germantown, Glendale-River Hills, Hamilton, Maple Dale-Indian Hills, Muskego-Norway, New Berlin, Nicolet and Whitnall on August 31, 1984, IS DENIED.

6. The Motion to Dismiss filed by the State of Wisconsin; Herbert Grover, State Superintendent of Public Instruction for the State of Wisconsin; and Anthony Earl, Governor of the State of Wisconsin, on August 31, 1984, IS GRANTED IN PART AND DENIED IN PART. All claims against the State of Wisconsin are dismissed. All pendent state claims against the Superintendent and the Governor are dismissed.

7. The Motion to Dismiss filed by the Agency School Committee of CESA 19; Virginia Stolhand, in her official capacity as President of Agency School Committee of CESA 19; Cooperative Educational Service Agency 19; William D. Bergum, in his official capacity as Executive Administrator of CESA 19; and Paule Kolff, in her official capacity as Chairperson of the CESA 19 Board of Control on August 31, 1984, IS GRANTED.

8. The plaintiffs may file and serve a Second Amended Complaint in conformity with this decision within ten (10) days of the date of this order. The complaint must be amended: (a) to state the age, race, place of residence and place of school attendance of the minor plaintiffs; (b) to reflect the dismissal of all claims against the State of Wisconsin and the dismissal of all pendent state claims against the Governor and the Superintendent; and (c) to name successors to the former Regional Defendants. The caption must also be amended to reflect these changes. No other amendments may be made pursuant to this order.

9. The defendants must answer the Second Amended Complaint. Their answers must be served and filed within twenty (20) days of the date of this order.

10. The Motion filed by a class of pupils, parents and teachers in the Milwaukee area on September 5, 1984, IS DENIED because it is moot.

11. The Motion of Twenty-Four Suburban School Boards for Leave to File Supplementary Materials in Support of Motion to Dismiss Amended Complaint (filed April 19, 1985) IS GRANTED.